[No. 67635-1-I.   Division One.   March 5, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM C. SELLS, JR., *Appellant*.

920

*Jordan B. McCabe* (of *McCabe Law Office*), for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 GROSSE, J. — Where the proof establishes the theft of a credit card in the name of both an institution and an individual, the subsequent use of that card to obtain goods or services falls within the ambit of the crime of identity theft as that has been defined by the legislature. Here, those are the facts of the case. We affirm.

## FACTS

¶2 On July 15, 2010, an employee of the North Beach School District (District) discovered that the District's offices had been burglarized and that three credit cards were missing from a locked cabinet: a Sears card, an Office Depot card, and a Visa card. The Sears card and the Office Depot card were issued in the name of the North Beach School District; the Visa card was issued in the names of both the District and Stanley Pinnick, the district superintendent.

¶3 The same morning, the Visa card bearing the name of the District and Pinnick was used at an AM/PM store in Aberdeen. An employee of the store testified that William Sells Jr. and another man came into the store several times and attempted to use the Visa card. When Sells was unable to produce identification, the store manager refused to allow Sells to use the card a second time. A Grays Harbor County Sheriff's Department detective obtained the surveillance tape from the AM/PM store, which showed Sells and another person making purchases at the store.

¶4 The same morning, the Visa card was used to purchase gas and propane at a Valero station in Aberdeen. An employee of the station testified that Sells was the person who used the card. Later the same day, the Visa card was used at the America's Diner in Aberdeen. A waitress testified that Sells was eating at the restaurant with another man and used the Visa card to pay the bill. Another witness testified that she saw the man shown on the AM/PM surveillance tape, an acquaintance of hers, having breakfast with another man (Sells) at the diner.

¶5 Three days later, the detective went to Sells' home and searched Sells' truck. He found the receipts from the AM/PM transaction and the America's Diner transaction in the cab of the truck. He also found the District's Office Depot card and the Sears card in the glove box of Sells' truck. The Visa card was never found.

¶6 The State charged Sells with one count of second degree identity theft (using the Visa card with Pinnick's name on it) and two counts of second degree possession of stolen property (the Sears card and the Office Depot card). The matter went to trial and, during closing argument, Sells' counsel conceded guilt on the possession of stolen property charges. The jury found Sells guilty on all three counts.

¶7 The trial court sentenced Sells to the high end of the standard range on both counts and ordered the sentences to

run consecutively pursuant to RCW 9.94A.535(2)(c).[1] The court denied Sells credit for time served.

## ANALYSIS

*Sufficiency of the Evidence*

■ ¶8 Sells argues that the evidence was not sufficient to convict him of second degree identity theft. We review a challenge to the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.[2] A claim of insufficiency admits the truth of the State's evidence as well as all reasonable inferences that can be drawn from that evidence.[3] We defer to the trier of fact on the issue of the persuasiveness of the evidence.[4]

■■ ¶9 The identity theft statute prohibits the possession or use of a means of identification of another person with the intent to commit a crime.[5] Second degree identity theft involves credit, money, goods, services, or anything else of value less than $1,500.[6] A "means of identification" for purposes of the identity theft statute means information

---

[1] RCW 9.94A.535(2)(c) allows a trial court to impose an aggravated exceptional sentence without a finding of fact by a jury where "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."

[2] *State v. Hayes*, 164 Wn. App. 459, 482, 262 P.3d 538 (2011).

[3] *State v. Corbett*, 158 Wn. App. 576, 587, 242 P.3d 52 (2010).

[4] *Corbett*, 158 Wn. App. at 587.

[5] RCW 9.35.020(1): "No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime."

[6] RCW 9.35.020(2): "Violation of this section when the accused or an accomplice violates subsection (1) of this section and obtains credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony punishable according to chapter 9A.20 RCW."

RCW 9.35.020(3): "A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amount-

or an item that is not describing finances or credit, but is personal to or identifiable with an individual or other person, including a person's name.[7] The phrase "another person" as used in the identity theft statute requires proof that the identification or financial information belongs to a real person.[8] Actual use of the means of identification is not required in order to convict.[9]

¶10 Sells argues that the evidence is insufficient because identity theft requires evidence that a person intentionally obtain another person's identifying information for the purpose of using *that information* to commit a crime. He argues that the evidence is insufficient because there is no evidence that he intended to either obtain Pinnick's name or use Pinnick's name in the commission of a crime. In effect, Sells is arguing that in order to be guilty of identity theft as charged, the State had to prove that when he used the Visa card to purchase goods or services, Sells affirmatively represented to the vendor that he was Stanley Pinnick. In support of his argument, he relies on this court's opinion in *State v. Berry*.[10] But that case does not support his argument. In *Berry*, the certification for the determination of probable cause alleged that the defendant presented a driver's license in the name of Timothy J. Davis and filled out a business check in the business account of

---

ing to identity theft in the first degree. Identity theft in the second degree is a class C felony punishable according to chapter 9A.20 RCW."

[7] RCW 9.35.005(3): " 'Means of identification' means information or an item that is not describing finances or credit but is personal to or identifiable with an individual or other person, including: A current or former name of the person, telephone number, an electronic address, or identifier of the individual or a member of his or her family, including the ancestor of the person; information relating to a change in name, address, telephone number, or electronic address or identifier of the individual or his or her family; a social security, driver's license, or tax identification number of the individual or a member of his or her family; and other information that could be used to identify the person, including unique biometric data."

[8] *State v. Berry*, 129 Wn. App. 59, 67, 117 P.3d 1162 (2005).

[9] *Berry*, 129 Wn. App. at 70.

[10] 129 Wn. App. 59, 67, 117 P.3d 1162 (2005).

" 'Computech dba. Tim J. Davis.' "[11] The account holder information and routing number on the check were fictitious, but the checking account number was a valid checking account held by a person named Herb Paulson. Thus, the only real person involved was Paulson, but Berry was charged with using a means of identification or financial information (the driver's license) in the name of Timothy Davis, a fictitious person. The court determined that because Berry was not charged with stealing the identity of a specific, real person, the certification did not and could not provide a factual basis for Berry's guilty plea and that the trial court accordingly erred in denying Berry's motion to withdraw his guilty plea. Here, unlike in *Berry*, Sells was charged with stealing the identity of a specific, real person, namely Pinnick. *Berry* does not, as Sells asserts, compel the reversal of his conviction of second degree identity theft. Sells cites no other authority to support his argument.

¶11 The Visa card bearing Pinnick's name constitutes a means of identification of Pinnick. The evidence showed that Sells knowingly possessed the Visa card. He used the Visa card with the intent of obtaining goods and services by depriving the cardholder of the funds used to pay for these goods and services. Accordingly, the evidence, viewed in a light most favorable to the State, was sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt on the identity theft charge.

*Ineffective Assistance of Counsel*

¶12 Sells argues that his trial counsel was ineffective for failing to request a jury instruction on third degree theft as a lesser included offense of second degree identity theft. The threshold issue is whether Sells was entitled to a jury instruction on third degree theft. If he was not so entitled, then he could not have been denied effective assistance of counsel as he argues.

---

[11] *Berry*, 129 Wn. App. at 63.

██ ██ ¶13 An offense is a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the offense charged and (2) the evidence supports an inference that the lesser crime was committed.[12] If it is possible to commit the greater offense without committing the lesser offense, the latter is not a lesser included offense.[13] The mere possibility that the jury might disbelieve the State's evidence is not a justification for giving a lesser included offense instruction.[14]

██ ¶14 In the context of a double jeopardy analysis, this court has held that second degree identity theft and second degree theft are not the same in law because each contains an element that the other does not.[15] The same analysis applies to second degree identity theft and third degree theft. Second degree identity theft requires proof that the defendant "obtain, possess, use, or transfer" another person's identification or financial information.[16] Third degree theft does not require this. Third degree theft requires proof that one wrongfully obtained the property of another with intent to deprive him or her of the property.[17] Second degree identity theft does not require proof of this. Because third degree theft is not a lesser included offense of second degree identity theft, Sells was not entitled to a jury instruction on third degree theft, and his counsel was not ineffective for failing to request such an instruction.

*Jury Instructions*

██ ¶15 Jury instructions must properly inform the jury of the applicable law, not mislead the jury, and permit

---

[12] *State v. Crittenden*, 146 Wn. App. 361, 366, 189 P.3d 849 (2008).

[13] *Crittenden*, 146 Wn. App. at 366.

[14] *State v. Guilliot*, 106 Wn. App. 355, 367, 22 P.3d 1266 (2001).

[15] *State v. Milam*, 155 Wn. App. 365, 374-75, 228 P.3d 788 (2010).

[16] RCW 9.35.020(1).

[17] RCW 9A.56.020(1)(a), .050(1)(a).

each party to argue its theory of the case.[18] We review a challenge to the adequacy of jury instructions de novo, as a question of law, in the context of the instructions as a whole.[19] We presume that the jury reads the court's instructions as a whole.[20]

¶16 Sells raises a number of arguments about the jury instructions on the charge of second degree identity theft. First, he argues that the to-convict instruction was an erroneous statement of the law because the State erroneously argued, in its *trial memorandum*, that the District was a "person" for purposes of the identity theft statute. Also, in the *information*, the State charged Sells with using a means of identification of Stanley Pinnick and/or possessing and using financial information of the District. But the *jury instruction* did not allow the jury to convict Sells for possessing and using financial information of the District. Rather, the to-convict instruction referred only to "a means of identification of Mr. Stanley Pinnick." The instruction did not give the jury the alternative of convicting Sells on the basis of his possession and use of the financial information of the District. Sells' argument is without merit.

¶17 Sells also argues that the instructions on identity theft are confusing. His argument is as follows. Instruction 2 provides in part that a person commits second degree identity theft "when he possesses a means of identification of a person with intent to commit the crime of theft." Instruction 4 (the to-convict instruction) states that one of the elements of second degree identity theft is "[t]hat on or about July 15, 2010, Mr. Sells or a person to whom he acted as an accomplice did possess a means of identification of Mr. Stanley Pinnick." Instruction 6 defines "means of identification" as "information not describing finances or credit that is personal to or identifiable with an individual. This

---

[18] *State v. Castillo*, 150 Wn. App. 466, 469, 208 P.3d 1201 (2009).

[19] *Castillo*, 150 Wn. App. at 469.

[20] *State v. Pettus*, 89 Wn. App. 688, 696, 951 P.2d 284 (1998).

includes a name or former name of the person." Each of these instructions pertains to the identity theft charge and each of them refers to "a means of identification." The identity theft statute likewise refers to possessing or using either "a means of identification" or "financial information."[21] But, the unanimity instruction on the identity theft charge, instruction 11, talks about Sells' use of "an access device," although it also talks about Sells' possession and use of a "means of identification":

> Evidence has been introduced alleging multiple uses of an access device in the name of Mr. Stanley Pinnick and the North Beach School District. In order to convict William Sells Jr., as charged in Count 1, you must unanimously agree that at least one particular act of identity theft has been proven beyond a reasonable doubt. You need not unanimously agree that Mr. Sells committed all of the alleged acts of identity theft.

> Evidence of other alleged uses of the access device on July 15, 2010, may be considered by you only in so far as you believe they may bear on Mr. William Sells Jr.['s] knowing possession and use of a means of identification of Mr. Pinnick or as you believe it may bear upon Mr. Sells['] intent to commit the crime of theft and for no other purpose.

¶18 The term "access device" appears in the to-convict instruction on the possession of stolen property charge. Sells claims that the use of the term "access device" in instruction 11, pertaining to identity theft, renders the instructions confusing because the term is used in the to-convict instruction on the other charge. The inclusion, however, of instruction 9, defining the term "access device," dispels any confusion. Instruction 9 provides, "Access device means any card, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services or anything else of value." This definition allowed the jury to find that the "multiple uses of an access device in the name of Mr.

---

[21] RCW 9.35.020(1).

Stanley Pinnick and the North Beach School District," as that phrase is used in instruction 11, the unanimity instruction on the identity theft charge, refers to the Visa card. Read as a whole, the instructions are not confusing.

*State's Closing Argument*

¶19 The portion of the State's closing argument at issue pertains to whether Pinnick's name was on the Visa card along with the District's name. During closing argument, Sells' counsel stated, "Mr. Pinnick was in court yesterday. Why didn't we hear from him? Yeah, name was on that card. There's a reason why we didn't. His name wasn't on the card."

¶20 In response and rebuttal to this, the prosecutor argued:

> Mr. Singh [manager of the AM/PM] wanted to see identification. Do you suppose that might have been because he saw that it said North Beach School District/Stanley L. Pinnick and wanted to know whether the person standing in front of him was Stanley L. Pinnick? You know, I wish every waitress where I went to buy food was thorough and looked at the card, but they don't always do that. They just take the card and run it. All right. In this case the waitress from the diner remembered North Beach School District. Mr. Singh asked for identification. The answer is this card was different. This card was issued by the bank. It wasn't a Home [sic] Depot card and it wasn't a Sears card. It was issued by the bank and it had both their names on it for very good reason, because Mr. Pinnick could use it on school district business, have his name on it. *Is there some evidence here that his name wasn't on the card? I wish we had the card, but the card was thrown away, lost, going who knows where in those three days. But the answer is, is there reasonable doubt that his name was not on the card? And the answer is no.*[22]

¶21 Sells' trial counsel did not object to the prosecutor's statements. On appeal, Sells argues that by making

---

[22] (Emphasis added.)

the statements highlighted above, the prosecutor improperly shifted the burden of proof to him and commented on his failure to present evidence. He also argues that his trial counsel was ineffective for failing to object to the prosecutor's statements. If the statements are not improper, then Sells was not denied effective assistance of counsel as he argues.

¶22 A prosecutor may commit misconduct by mentioning during closing argument that the defense failed to present witnesses or by stating that the jury should find the defendant guilty based simply on the defendant's failure to present evidence to support his defense theory.[23] However, "[t]he mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense."[24] A prosecutor is entitled to point out a lack of evidentiary support for the defendant's theory of the case.[25] Also, "[a] prosecutor may state that certain testimony is not denied, without reference to who could have denied it."[26]

¶23 The prosecutor's comments about whether there was any evidence that Pinnick's name was not on the Visa card were proper under these authorities. By making the comment, the prosecutor was commenting that there was no evidence presented to contradict the State's evidence that Pinnick's name was on the Visa card along with that of the District. This does not constitute misconduct. Because the prosecutor's comments were not improper, Sells was not denied effective assistance of counsel when his trial counsel failed to object to them.

---

[23] *State v. Jackson*, 150 Wn. App. 877, 885, 209 P.3d 553 (2009).

[24] *Jackson*, 150 Wn. App. at 885-86.

[25] *State v. Killingsworth*, 166 Wn. App. 283, 291-90, 269 P.3d 1064 (2012).

[26] *State v. Morris*, 150 Wn. App. 927, 931, 210 P.3d 1025 (2009) (referring to the rule first announced in *State v. Litzenberger*, 140 Wash. 308, 311, 248 P. 799 (1926)).

¶24 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

LEACH, A.C.J., and ELLINGTON, J., concur.

Review denied at 176 Wn.2d 1001 (2013).