FILED
COURT OF APPEALS
DIVISION II

2013 JUN -4 AM 8: 58

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>VERNON LEE SHELTON, aka VERNON LEE OROURKE<br><br>Appellant. | No. 43375-3-II<br><br><br><br>UNPUBLISHED OPINION |

HUNT, J. — Vernon Lee Shelton (aka Vernon Lee Orourke) appeals his jury trial convictions for attempting to elude, driving while license suspended, and bail jumping. He argues that (1) prosecutorial misconduct during closing argument violated his right to a fair trial, and (2) his attorney provided ineffective assistance in failing to object to this prosecutorial misconduct. We affirm.

### FACTS

At 5 A.M. on January 10, 2011, Clark County Sheriff's Deputy Todd Richard Young was on patrol in a marked patrol vehicle when he noticed a blue Geo Storm driving on 76th Street in Orchards, Washington. From about six to ten feet away, Young recognized the driver as Vernon Lee Shelton. Aware that Shelton's "driving status was suspended or revoked," Young made a U-turn to "initiate a traffic stop on Mr. Shelton" and activated his emergency lights. Verbatim Report of Proceedings (VRP) (Vol. 1) at 56. Shelton signaled as if he were planning to pull

over; then he accelerated and drove through a stop sign. Consistent with the sheriff's pursuit policy, Young did not pursue Shelton.

Six months later, at 3:15 A.M. on July 6, 2011, Young again saw the blue Geo Storm, "noticed a black male adult in the driver's seat that appeared to be Mr. Shelton," and again tried to stop the Geo. VRP (Vol. 1) at 63. The Geo stopped. Young pulled behind the Geo, illuminated his patrol car's spotlights, walked up to the driver's side of the Geo, and shined his flashlight on the car window; Young was certain the driver was Shelton. Shelton looked back at Young and drove away. Young returned his patrol car and pursued Shelton. After following Shelton through a red stop light, Young activated his siren. According to Young, Shelton "blacked out" all of the car lights and sped away. VRP (Vol. 1) at 67. Young, again, had to discontinue the chase.

The State charged Shelton with two counts of attempting to elude, two counts of driving while his license was suspended, and one count of bail jumping. At trial, Young testified as described above. Shelton's former girlfriend, Jessica M. Webber, testified that (1) she had been driving the Geo both times that Young had attempted a traffic stop, and (2) she had decided to drive away from Young because she was unsure whether her license was suspended. Shelton did not testify.

In closing argument, the prosecutor stated that the State's evidence supporting many of the elements of the charged crimes was "uncontested." VRP (Vol. 2) at 245. For example, he argued: (1) "[That Shelton's license was suspended] has been proven beyond a reasonable doubt. There's been no evidence put forth to the contrary";[1] (2) that Young signaled to the blue

---

[1] VRP (Vol. 2) at 245-46.

2

Geo's driver to stop was "uncontested";[2] and (3) that the offenses occurred in the state of Washington was also not contested. Turning to the disputed element, the prosecutor then argued, "[T]he main issue is whether or not it was the Defendant driving the motor vehicle." VRP (Vol. 2) at 261. After reminding the jury that they were the "sole judges of the credibility of the witnesses,"[3] the prosecutor compared Young's testimony with Shelton's girlfriend's, testimony:

> Do you believe that Detective Young on those days where he describes in detail what he saw, do you believe him as to what he saw? Or are you to believe Jessica Webber and what she tells everybody ten months later, with that close of a relationship with Mr. Shelton? Do you believe Jessica Webber when the facts are different as to where the lights, the emergency lights were turned on? When the facts are different as to whether or not the lights on the vehicle were on or off? When the facts are different . . .
>
> Ladies and gentlemen, I'm not going to go much more into it. You've heard it all, you know the issues, it just comes down to the reasonableness of the testimony and what you believe. Okay. We would submit what Jessica Webber told us and the reasons why she's telling us and the facts circumstancing how that information comes out are not reasonable. I've told you why, you've heard why. Her testimony is not reasonable, is not true based on the facts.

VRP (Vol. 2) at 268, 269; *see also* VRP (Vol. 2) at 265-66 (questioning the reasonableness of Webber's account). The jury convicted Shelton on all counts. Shelton appeals.[4]

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Shelton first argues that the prosecutor committed misconduct by shifting the burden of proof in closing argument. This argument fails.

---

[2] VRP (Vol. 2) at 258.

[3] VRP (Vol. 2) at 264.

[4] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

## A. Standard of Review

To prevail on a claim of prosecutorial misconduct, Shelton must show "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). Shelton must demonstrate prejudice by proving that "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" *Magers*, 164 Wn.2d at 191 (alteration in original) (quoting *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)); *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). And because trial counsel did not object, the "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995); *accord State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

A prosecutor commits misconduct by misstating the law regarding the burden of proof. *State v. Fleming*, 83 Wn. App. 209, 213–14, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997); *In re Winship*, 397 U.S. 358, 361–62, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (a defendant has no duty to present evidence). A prosecutor commits misconduct by implying the defense bears a burden to produce evidence of innocence. *Fleming*, 83 Wn. App. at 213–14. It is also improper for a prosecutor to assert a personal opinion about a witness's veracity or to argue that in order to believe the defendant's evidence the jury must believe that the testifying officers are lying. *See State v. Fiallo-Lopez*, 78 Wn. App. 717, 730, 899 P.2d 1294 (1995) (citing *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984)); *State v. Barrow*, 60 Wn. App. 869, 874-75, 809 P.2d 209 (1991).

During closing arguments, however, we afford the prosecutor wide latitude in making arguments and drawing reasonable inferences from the evidence. *Fisher*, 165 Wn.2d at 747. We review a prosecutor's remarks during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *Dhaliwal*, 150 Wn.2d at 578.

## B. Burden Shifting

### 1. No contradicting evidence

Here, the prosecutor did not improperly shift the burden of proof by emphasizing that certain evidence was uncontradicted. Rather, he simply pointed out that there was no evidence contradicting the State's evidence of certain elements of the charged crimes. "'The mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense.'" *State v. Sells*, 166 Wn. App. 918, 930, 271 P.3d 952 (2012) (quoting *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009)), *review denied*, 176 Wn.2d 1001 (2013). Thus, we hold that the prosecutor did not commit misconduct by "commenting that there was no evidence presented to contradict the State's evidence." *Sells*, 166 Wn. App. at 930; *see also State v. Killingsworth*, 166 Wn. App. 283, 290–92, 269 P.3d 1064, *review denied*, 174 Wn.2d 1007 (2012).

### 2. Remarks about Webber's testimony

Similarly, the prosecutor did not shift the burden of proof by "suggest[ing] that jurors had to believe [Webber's] testimony over [Young's] in order to acquit." Br. of Appellant at 6. On the contrary, counsel may comment on a witness's credibility as long as he does not express it as a personal opinion and does not argue facts outside the record. *State v. Smith*, 104 Wn.2d 497, 510-11, 707 P.2d 1306 (1985). Thus, a prosecutor may properly draw inferences "from the

evidence as to why the jury would want to believe one witness over another." *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995); *see also State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996).

Here, the portion of the prosecutor's argument focusing on Webber's testimony was intended to assist the jury in determining the witnesses' credibility and evaluating the reasonableness of conflicting testimony: The prosecutor merely emphasized the substantial conflicting testimony, pointed out aspects of the testimonies that were inconsistent or irreconcilable, discussed Webber's possible motives to present false testimony, and argued that the jury would have to examine the testimonies to determine which was most credible. Reviewing the prosecutor's closing remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions, we hold that this closing argument was not misconduct.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Shelton argues that his trial counsel's failure to object to the alleged prosecutorial misconduct constituted ineffective assistance of counsel. This argument also fails.

To demonstrate ineffective assistance, a defendant must show that (1) defense counsel's representation was deficient because it fell below an objective standard of reasonableness; and (2) the deficient representation prejudiced the defendant because there is a reasonable probability that the result of the proceeding would have been different except for counsel's errors. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to show either prong of the test defeats a claim of counsel's ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Further, "[w]here a claim of ineffective assistance of counsel rests on trial

counsel's failure to object, a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010). Because we hold that the prosecutor did not commit misconduct, Shelton cannot show that his trial counsel was deficient in failing to object. Therefore, his argument fails on the first prong of the test, and we need not address the second.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Quinn-Brintnall, J.