FILED
COURT OF APPEALS
DIVISION II

2014 FEB 11 AM 8:38

OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43573-0-II |
| Respondent, | |
| v. | |
| ROBERT LUCAS WOODWARD, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Robert Woodward appeals his convictions and sentence for first degree child molestation and first degree child rape. Woodward argues (1) prosecutorial misconduct denied him a fair trial, (2) he received ineffective assistance of counsel when his trial counsel failed to object to the prosecutor's closing statements, (3) he was convicted by a biased jury, (4) the trial court violated his right to a jury trial by not requiring the jury to make a finding on same criminal conduct, and (5) the trial court should have sentenced him under the sentencing scheme in effect prior to September 1, 2001. We affirm Woodward's convictions, but vacate his sentence and remand for the trial court to sentence him under the sentencing scheme in effect prior to September 1, 2001.

## FACTS

A.G. and H.G. began living with their grandmother, Amanda Woodward, and step-grandfather, Woodward, in 1999. A.G. was five years old and H.G. was three years old when they moved in with their grandparents.

In early 2011, A.G. reported to her friend and grandmother that Woodward had molested her and H.G. The State charged Woodward with first degree child molestation of H.G. between January 1, 1999 and August 30, 2008 (count I); first degree child molestation of A.G. between

January 1, 1999 and January 31, 2006 (count II); and first degree rape of a child of A.G. between January 1, 1999 and January 31, 2006 (count III). The jury was unable to reach a verdict in the first trial and the trial court declared a mistrial.

The State retried Woodward in April 2012. During jury selection for the retrial, the trial court denied Woodward's motions to excuse jurors 3, 26, and 27 for cause. Woodward used two of his seven peremptory challenges to excuse jurors 3 and 26, and exhausted his challenges without removing juror 27.

During individual questioning, juror 3 said that when his wife was 12 years old, she and her younger sister were forcibly raped by their mother's boyfriend. He said the boyfriend was not convicted due to issues with evidence, but that his wife still had problems secondary to the incident. When he heard what the charged crime was, juror 3 said a "shiver [went] up [his] spine." IV Report of Proceedings (RP) at 604. He said that "this would be the more disgusting thing for me. So in all the possibilities of people doing whatever they do, this is not—this is not really good at all." IV RP at 602. Despite his wife's experience, juror 3 stated he believed he could "probably" make a fair determination in the case. IV RP at 602. Juror 3 said he would base his decision on the evidence and "[f]rom whatever you give—whatever information you give me . . . and I guess, the Judge would tell me what the law is." IV RP at 606-07.

During group questioning, juror 26 raised her hand when defense counsel asked if anyone thought they were too sympathetic or empathetic. Juror 26 stated she is pretty sympathetic to other people's issues and that she was not sure if she could put her sympathy aside during deliberations. When questioned further by the State, juror 26 said she thought she could base her decision on the evidence and the law, and not let sympathy overcome the evidence or the law.

During individual questioning, juror 27, who had been a teacher for 40 years, said he had A.G. in class one year when he was a substitute teacher. Juror 27 also stated that he knew several of the children on the witness list, and that he was the IEP manager at high school for one of the witnesses. The State's attorney also noted that he grew up with juror 27's children. Other than stating it may be awkward being a juror because he knew some of the witnesses, juror 27 said that having had A.G. in class, knowing some of the witnesses, and his children growing up with the State's counsel would not affect his ability to be fair and impartial.

At trial, both Woodward and his wife testified that Woodward suffered from several medical conditions and had undergone treatment that resulted in Woodward not having any sexual interest and being unable to engage in sexual activity. During the pretrial investigation, however, Woodward's wife told a detective that she and Woodward had a normal, healthy sex life.

During closing argument, the State commented on the lack of medical evidence to support Woodward's and his wife's testimony that Woodward suffered from illnesses that made him incapable of committing the charged crimes. The State said:

> [S]omehow those treatments or illnesses starting in 1999 prevented him from having either the opportunity or the sexual interest to have committed the crimes that he's alleged to have committed.
>
> And yet both parties are entitled to the—you know, your verdict is to be based upon the evidence and lack of evidence. . . . And your instructions tell you that both sides have—are entitled to the benefit of the evidence, regardless of who introduced evidence. I would submit to you that that extends implicitly, if not explicitly in the instructions, to the lack of evidence.
>
> And when the claim is made that the defendant has some sort of medical issue that prevents him from even being capable of committing the crime that he's accused to have committed, and when any reasonable person with a medical claim that would have prevented them from some medical condition having the ability to commit the crimes with which he was committed would come forward with

some sort of medical evidence that here's—here's the evidence, here's the doctor . . . the nurse, here's the medical records, something that documents that I have this condition and that it—it has resulted in these effects. . . . Those things would be presented to you by a reasonable person. And—and you don't have any evidence along those lines in this case.

VI RP at 1133-34. Woodward did not object to the State's arguments in closing.

The jury returned guilty verdicts on all three counts. The trial court sentenced Woodward to indeterminate sentencing pursuant to RCW 9.94A.507. The trial court determined Woodward had an offender score of 6 and sentenced him to life in prison, with a minimum term of 130 months on counts I and II and 216 months on count III. Woodward timely appeals.

ANALYSIS

I.    PROSECUTORIAL MISCONDUCT

Woodward argues that prosecutorial misconduct denied him a fair trial. Specifically, he argues the State improperly shifted the burden of proof in closing argument by commenting on the lack of medical evidence to support Woodward's defense that he was incapable of committing the charged crimes due to his medical conditions. Woodward also argues his trial counsel was ineffective for failing to object to the prosecutor's statements. Because the prosecutor's statements were not improper, the prosecutor did not commit misconduct and Woodward was not denied effective assistance of counsel.

A.    STANDARD OF REVIEW

A defendant who alleges prosecutorial misconduct bears the burden of proving that, in the context of the record and circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). A defendant can establish prejudice by showing a substantial likelihood that the misconduct affected the jury verdict. *Glasmann*, 175 Wn.2d at 704. Where the defendant fails

4

to object to the prosecutor's improper statements at trial, such failure constitutes a waiver of claims of prosecutorial misconduct unless the prosecutor's statements are so flagrant and ill-intentioned that an instruction would not have cured the prejudice. *Glasmann*, 175 Wn.2d at 704. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

In determining whether the misconduct warrants reversal, we consider its prejudicial nature and cumulative effect. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). We review a prosecutor's remarks during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).[1]

B.    IMPROPER STATEMENTS

We first consider whether the prosecutor's statements were improper. *Glasmann*, 175 Wn.2d at 704. Here, the State commented on the lack of medical evidence to support Woodward's defense and argued that a reasonable person would have presented such medical evidence. Woodward did not object to these closing statements.

---

[1] Woodward improperly states that we should apply the constitutional harmless error standard. Our Supreme Court declined to adopt the constitutional harmless error standard in a prosecutorial misconduct case where the appellants contended that it was the appropriate standard because the prosecutor's remarks violated their right to the presumption of innocence and shifted the burden of proof. *Emery*, 174 Wn.2d at 756-58. Here, Woodward argues only that the prosecutor's closing arguments shifted the burden of proof. Accordingly, as the Supreme Court did in *Emery*, we decline to adopt the constitutional harmless error standard here.

A prosecutor has wide latitude to argue reasonable inferences from the evidence; but it is improper for the prosecutor to argue that the burden of proof rests with the defendant. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). A prosecutor may commit misconduct if he mentions in closing argument that the defense failed to present witnesses or if he states that the jury should find the defendant guilty based simply on the defendant's failure to present evidence to support his defense theory. *State v. Sells*, 166 Wn. App. 918, 930, 271 P.3d 952 (2012) (citing *State v. Jackson*, 150 Wn. App. 877, 885, 209 P.3d 553 (2009)), *review denied*, 176 Wn.2d 1001 (2013). However, "'[t]he mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense.' A prosecutor is entitled to point out a lack of evidentiary support for the defendant's theory of the case." *Sells*, 166 Wn. App. at 930 (alteration in original) (quoting *Jackson*, 150 Wn. App. at 885-86).

In *Jackson*, during closing argument, the prosecutor stated "there was not a single shred of testimony in this case to corroborate [the defendant's girl friend's] story and . . . the jury should compare Jackson's evidence with the State's evidence." *Jackson*, 150 Wn. App. at 885. Because the mere mention that evidence is lacking does not constitute prosecutorial misconduct and because the prosecutor in *Jackson* clearly explained to the jury that the State had the burden of proof, this court held the prosecutor did not commit misconduct. *Jackson*, 150 Wn. App. at 885-86. Similarly, in *Sells*, the defendant was charged with second degree identity theft, and during closing argument the prosecutor commented on the lack of evidence to show that the North Beach School District superintendant's name was not on the visa card the defendant allegedly stole from the school district. *Sells*, 166 Wn. App. at 929-30. Division One of this court held the prosecutor's statement was not improper and did not constitute misconduct. *Sells*, 166 Wn. App. at 929-30.

The prosecutor in this case clearly explained to the jury that the State had the burden of proof: "I represent the prosecution. And the prosecution carries the . . . must meet the burden of proof. We have . . . the burden [of proof.]"[2] VI RP at 1135. The prosecutor did not imply that Woodward was required to present evidence or that the jury should find Woodward guilty based on his decision to present only his and his wife's testimony on his medical conditions. The prosecutor merely commented on the lack of medical evidence to support Woodward's defense theory that he was unable to commit the charged crimes due to his medical conditions and stated that a reasonable person would have presented evidence. The mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense. *Jackson*, 150 Wn. App. at 885-86.

Woodward relies on *State v. Toth*, 152 Wn. App. 610, 217 P.3d 377 (2009), to argue that a prosecutor's comment on the defendant's failure to put forward evidence in support of his defense constitutes prosecutorial misconduct. The defendant in *Toth* was convicted with felony driving under the influence. *Toth*, 152 Wn. App. at 612. The prosecutor stated in closing argument that the defendant failed to present any witness or evidence to corroborate his defense that he was at his brother's house before driving where he claimed he drank only two beers and a sip of whiskey. *Toth*, 152 Wn. App. at 615. The court held the prosecutor committed misconduct because he implied the defendant "had a duty to present evidence by stating that [the defendant] did not produce corroborating evidence by calling specific witnesses to testify" and

---

[2] The jury instructions also clearly stated that the State had the burden of proof. VI RP at 1115 ("The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.").

7

that the jury could then improperly infer that the defendant had the burden to prove he was not intoxicated. *Toth*, 152 Wn. App. at 615.

In *Toth*, the prosecutor commented on the defendant's failure to produce evidence regarding a fact question—where the defendant was and how much he drank before driving—and a specific element of the crime—intoxication. Here, the prosecutor merely commented on the lack of evidence to corroborate Woodward's general defense that his medical conditions prevented him from committing the charged crimes. Because the prosecutor's comments during closing argument did not address specific fact questions or elements of the charged crimes in Woodward's case, *Toth* is not controlling and does not support Woodward's prosecutorial misconduct argument.

Further, under the missing witness doctrine, "the defendant's theory of the case is subject to the same scrutiny as the State's."[3] *State v. Montgomery*, 163 Wn.2d 577, 598, 183 P.3d 267 (2008). "The prosecutor may comment on the defendant's failure to call a witness so long as it is clear the defendant was able to produce the witness and the defendant's testimony unequivocally implies the uncalled witness's ability to corroborate his theory of the case." *State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114 (1990). The defendant is able to produce a witness if "the witness is peculiarly available to the party, i.e., peculiarly within the [defendant's] power to produce." *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

---

[3] As argued by counsel at oral argument, the missing witness doctrine is not directly at issue here because it must have been "raised early enough in the [trial] proceedings to provide an opportunity for rebuttal or explanation" of why the witness was not called. *State v. Montgomery*, 163 Wn.2d 577, 599, 183 P.3d 267 (2008). But the doctrine provides a relevant and useful analogy to the prosecutor's comments here.

At trial, Woodward's wife testified that Woodward had seen a doctor regarding his medical conditions that Woodward and his wife claimed prevented Woodward from being able to commit the charged crimes. Any doctor Woodward had seen would have been peculiarly available to Woodward and within his power to produce and likely would have corroborated Woodward's defense. Accordingly, the prosecutor's statements were not improper, especially as a response to the defense Woodward raised, and the prosecutor did not commit misconduct. Because the prosecutor's statements were not improper, Woodward was not denied effective assistance of counsel when his trial counsel failed to object to the prosecutor's statements.

## II. IMPARTIAL JURY

Woodward next argues the trial court violated his right to due process and his right to an impartial jury when it improperly denied his challenges to excuse jurors 3, 26, and 27 for cause. Woodward used two of his seven peremptory challenges to excuse jurors 3 and 26, but did not excuse juror 27, who ultimately sat on the jury that convicted him. Thus, Woodward contends that a partial jury convicted him. Because juror 27 was not biased and Woodward used peremptory challenges to excuse jurors 3 and 26, Woodward was not denied his right to an impartial jury.

### A. RIGHT TO A FAIR AND UNBIASED JURY

The right to a jury trial includes the right to a fair and impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *City of Cheney v. Grunewald*, 55 Wn. App. 807, 810, 780 P.2d 1332 (1989). The Washington Constitution provides no greater protection than the federal right to an impartial jury. *State v. Fire*, 145 Wn.2d 152, 163, 34 P.3d 1218 (2001). A prospective juror must be excused for cause if the trial court determines the juror is actually or impliedly biased. RCW 4.44.170, .180, .190. Here, Woodward alleges juror 27 was actually biased,

9

defined as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2).

We review the trial court's decision to dismiss a juror to determine if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Grenning*, 142 Wn. App. 518, 540, 174 P.3d 706 (2008); *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Because the trial court is able to observe a juror, the trial court is in the best position to evaluate a juror's candor and the juror's ability to deliberate. *State v. Elmore*, 155 Wn.2d 758, 769 n.3, 123 P.3d 72 (2005). We must accept the trial court's decision regarding the credibility of the prospective juror and any other persons involved, as well as the trial court's choice of reasonable inferences. *Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 756, 812 P.2d 133 (1991).

Applying these principles to the present case, we hold that the trial court did not err by denying Woodward's challenge for actual bias—in other words, we defer to the trial court's factual determination that juror 27's state of mind was such that he could fairly and impartially try the case. Juror 27's acting as A.G.'s substitute teacher one year during his 40 year teaching career, being acquainted with one of the State's witnesses, and his children having grown up with the prosecutor was sufficient to support a reasonable inference that his state of mind was such that he could not try the case fairly and impartially. On the other hand, juror 27's responses to various questions, including his testimony that he could set aside his prior associations and render a fair decision, supported a reasonable and competing inference that he could deliberate fairly and impartially. *See* RCW 4.44.190. Because the evidence supporting each inference was

10

such that a reasonable person could adopt either one, the choice of inferences was for the trial court, and it acted within its discretion by finding that juror 27's state of mind did not constitute actual bias. We do not disturb the trial court's decision on appeal. Because juror 27 was not biased, Woodward was not convicted by a partial jury.

B.    WOODWARD'S FOR-CAUSE CHALLENGES

Woodward argues that the trial court violated his due process rights by forcing him to exhaust peremptory challenges to remove biased jurors who should have been excused for cause.

The right to peremptory challenges, however, is a statutory right, not a constitutional right. *Fire*, 145 Wn.2d at 167-68 (Alexander, J., concurring); *see also Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988) (Although the right to a jury trial is constitutional, peremptory challenges are statutory in nature.). If a defendant corrects a trial court's error of not excusing a juror for cause by using a peremptory challenge, and he "exhausts his peremptory challenges before the completion of jury selection, and is subsequently convicted by a jury on which no biased juror sat, he has not demonstrated prejudice, and reversal of his conviction is not warranted." *Fire*, 145 Wn.2d at 165. Accordingly, the forced use of a peremptory challenge is merely an exercise of a challenge, not its deprivation or loss. *Fire*, 145 Wn.2d at 162-63. Thus, using a peremptory challenge to create an impartial jury does not violate a defendant's due process rights. *Fire*, 145 Wn.2d at 162 (quoting *State v. Roberts*, 142 Wn.2d 471, 518, 14 P.3d 717 (2000)).

The trial court denied Woodward's challenges for cause to jurors 3 and 26, which resulted in Woodward using two of his seven peremptory challenges to excuse jurors 3 and 26. Even if Woodward could establish that the trial court erroneously denied his motions to excuse the two jurors, he would still be unable to establish a constitutional violation. Because

11

peremptory challenges are a statutory right and Woodward has failed to show he was prejudiced where no biased juror sat on his panel, the trial court did not violate Woodward's right to an impartial jury.

III.   SENTENCING

   A.   SAME CRIMINAL CONDUCT

Woodward argues the trial court violated his constitutional right to a jury trial by not submitting the issue of same criminal conduct to the jury.[4] Because the sentencing court may properly decide the issue of same criminal conduct, the trial court did not err by not submitting the same criminal conduct issue to the jury.

Crimes constitute the "[s]ame criminal conduct" for sentencing purposes when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). A defendant has the right to have any fact that increases the penalty for a crime beyond the prescribed statutory maximum submitted to the jury and proved beyond a reasonable doubt. *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). Because the "same criminal conduct" rule is an exception to the rule that all convictions count separately for purposes of computing the offender score, a finding of same criminal conduct can operate only to *decrease* the offender score and the otherwise applicable sentencing range. RCW 9.94A.525(5)(a); *In re Pers. Restraint of Markel*, 154 Wn.2d

---

[4] Woodward further argues that the trial court erred when it failed to find that counts II and III constituted the same criminal conduct. Woodward, however, did not raise this issue at the trial court and thus has waived the right to appeal it. *Jackson*, 150 Wn. App. at 892 (quoting *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 496, 158 P.3d 588 (2007) ("holding that issue waived when the defendant 'failed to ask the court to make a discretionary call of any factual dispute regarding the issue of same criminal conduct and he did not contest the issue at the trial level'")).

12

262, 274, 111 P.3d 249 (2005). Therefore, a trial court does not violate *Blakely* when it addresses the same criminal conduct rule because that finding can only serve to decrease the defendant's possible sentence. *See Markel*, 154 Wn.2d at 274. Accordingly, the trial court did not err by not submitting the issue of same criminal conduct to the jury.

B.     SENTENCING SCHEME

Woodward contends that the trial court should have sentenced him under RCW 9.94A.120, the sentencing scheme in effect prior to September 1, 2001. The State concedes this argument. We agree.

The State charged Woodward with crimes occurring between January 1, 1999 through January 31, 2006 and August 30, 2008. The legislature amended the sentencing scheme under which Woodward was sentenced on September 1, 2001.[5] The State presented evidence that Woodward committed the charged crimes throughout the charging period, including before the sentencing statute amendments in 2001. A jury convicted Woodward on all three counts without specifying whether Woodward committed the acts before or after the effective date of the sentencing statute amendments; nor was the jury required to specify when the charged crimes occurred.

When the sentence for a crime is increased during the period within which the crime was allegedly committed, and the evidence presented at trial indicates the crime was committed

---

[5] The legislature amended the sex offender sentencing scheme on September 1, 2001 to require the trial court to impose the statutory maximum for a sex offense and set a minimum release date within the standard range. LAWS OF 2001, 2nd sp. session, ch. 12, § 303. Under the former sex offender sentencing scheme, the trial court determined sentences within a standard range in accordance with the general sentencing scheme. Former RCW 9.94A.120(1) (2000). The trial court could also determine whether treatment and community custody were an appropriate option for the defendant. Former RCW 9.94A.120(8).

13

before the increase went into effect, the lesser sentence must be imposed. *State v. Parker*, 132 Wn.2d 182, 191-92, 937 P.2d 575 (1997).

We affirm Woodward's convictions, but vacate his sentence and remand for resentencing under the sentencing scheme in effect prior to September 1, 2001.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Maxa, J.

Lee, J.