# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54369-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ROBERT SCOTT ZIESEMER, | |
| Appellant. | |

MAXA, J. – Robert S. Ziesemer appeals his convictions of two counts of second degree identity theft. He also appeals the imposition of community custody supervision fees imposed as a legal financial obligation (LFO).

We hold that (1) there was sufficient evidence to support the identity theft convictions because the evidence supported a reasonable inference that Ziesemer intended to commit a crime with the financial information he possessed; and (2) community custody supervision fees as determined by the Department of Corrections (DOC) can be imposed on an indigent defendant because those fees are not "costs" as defined in RCW 10.01.160(2), but it is unclear from the record whether the trial court intended to impose the fees.

Accordingly, we affirm Ziesemer's convictions, but we remand for the trial court to consider whether to impose community custody supervision fees.

FACTS

Ziesemer consented to a search of his vehicle. Inside the backpack on the backseat, an officer found an identification card, a social security card, and a blank check belonging to Kimberly Hines. The officer also found a check from a car dealership written to a car washing service. The State charged Ziesemer with two counts of second degree identity theft and one count of second degree possession of stolen property.

Ziesemer and the State entered into a diversion agreement that required Ziesemer to complete certain conditions and in return the State would dismiss the charges against him. The parties agreed that if Ziesemer violated the agreement, the trial court would determine Ziesemer's guilt or innocence based on the investigation supporting the charges. Ziesemer stipulated "that the facts contained within the investigation reports are sufficient for a [t]rier of fact to find me guilty of the charge(s) presently filed against me in this matter." Clerk's Papers (CP) at 15.

Ziesemer violated the terms of the diversion agreement and agreed that the matter should proceed to a stipulated facts bench trial pursuant to the parties' diversion agreement. The parties agreed that the stipulated facts were those contained in the investigation reports.

The reports indicated that when the investigating officer located the documents inside Ziesemer's backpack, he asked Ziesemer if he knew Hines. Ziesemer hesitated, but then stated that he did not know her. When asked why he had Hines's identification card, social security card and blank check in his backpack, Ziesemer gave a vague response about being arrested previously and officers finding property belonging to a Kimberly Rodriguez. When questioned further, Ziesemer said a homeless person had given him the documents and that he forgot they

were in his backpack. Ziesemer also had a lock pick at the time of his arrest. On the front passenger floorboard the officer found 55 miscellaneous keys.

The trial court found, based on the investigation reports, that nothing "further [was] necessary in order to prove the elements of identity theft in the second degree as to both counts." Report of Proceedings (RP) (Jan. 16, 2020) at 9. The court noted that it had "a role in reviewing those documents to make sure that the State has met its burden." RP (Jan. 16, 2020) at 9. The court also commented that it considered the parties' stipulation, and that Ziesemer never gave a reason to the officer for possessing the documents. The trial court found Ziesemer guilty of two counts of second degree identity theft.

The trial court imposed a standard range sentence, which included 12 months of community custody. The court also found Ziesemer indigent and stated that it was imposing only mandatory LFOs. However, as a condition of community custody, the court required Ziesemer to "pay supervision fees as determined by DOC." CP at 29.

Ziesemer appeals his convictions and the imposition of community custody supervision fees.

ANALYSIS

A.    SUFFICIENCY OF EVIDENCE

Ziesemer argues that the State failed to prove that he had the intent to commit second degree identity theft because the evidence showed only that he had possession of the identification card, social security card, and two checks. We disagree.

1.    Standard of Review

When evaluating the sufficiency of evidence for a conviction, we view the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found the

elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). As part of the test for the sufficiency of evidence, we assume the truth of the State's evidence and all reasonable inferences drawn from the evidence. *Id*. at 106. These inferences must be drawn in the State's favor and strongly against the defendant. *Id*. And we defer to the fact finder's resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *Id*. Circumstantial evidence is as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

2.    Legal Principles

RCW 9.35.020(1) and (3) provide that a person, under circumstances that do not amount to first degree identity theft, may not "knowingly obtain, possess, use, or transfer a means of identification or financial information of another person . . . with the intent to commit . . . any crime." To convict, the State is not required to prove actual use of the financial information or the specific crime that the defendant intended to commit. *See State v. Fedorov*, 181 Wn. App. 187, 197-98, 324 P.3d 784 (2014) (specific crime); *State v. Sells*, 166 Wn. App. 918, 924, 271 P.3d 952 (2012) (actual use).

When a crime includes possession and intent as separate elements, intent cannot be inferred from mere possession alone. *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). But evidence of possession along with some slight corroborating evidence may be sufficient to infer intent. *Id*. Intent may only be deduced " 'if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.' " *Id*. (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).

4

3.    Analysis

Ziesemer argues the documents submitted by the State for the stipulated facts bench trial do not establish that Ziesemer intended to commit, aid, or abet a crime.

Here, the evidence is somewhat equivocal.  However, Ziesemer's backpack contained Hines's identification card and a blank check from her bank account.  Because the identification card presumably contained Hines's signature, a reasonable inference is that Ziesemer intended to use the card to forge Hines's signature on the blank check and thereby commit crimes of forgery and theft.

While there was no direct evidence that Ziesemer intended to commit a crime, we must assume the truth of all reasonable inferences drawn from the State's evidence.  *Homan*, 181 Wn.2d at 106.  And all that is needed to support an identity theft conviction is some slight corroborating evidence.  *Vasquez*, 178 Wn.2d at 8.

Ziesemer also contends the trial court improperly relied on his stipulation that the facts were sufficient to find him guilty.  Such a stipulation is not necessarily binding on the trial court. *State v. Drum*, 168 Wn.2d 23, 33-34, 225 P.3d 237 (2010).  But the trial court clearly stated that its finding was based upon its review of the documents provided by the State in assessing whether it found the elements of the crime.

We hold that the State presented sufficient evidence to prove beyond a reasonable doubt that Ziesemer intended to commit a crime with the financial information that he possessed.

B.    SUPERVISION FEES

Ziesemer argues that the trial court erred in imposing community custody supervision fees as determined by DOC because he is indigent.  We hold that the trial court could impose

supervision fees on Ziesemer, but we remand because it is unclear whether the court intended to impose such fees.

RCW 9.94A.703(2)(d)[1] provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [DOC]." "Community custody supervision fees are discretionary LFOs because they are waivable by the court." *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020).

Ziesemer relies on RCW 10.01.160(3), which states, "The court shall not order a defendant to pay *costs* if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." (Emphasis added.) But RCW 10.01.160(2) defines "cost" as an expense specifically incurred by the State from prosecuting the defendant, administering a deferred prosecution program, or administering pretrial supervision. A community custody supervision fee does not fall within this definition of "cost." *Spaulding*, 15 Wn. App. 2d at 537. Therefore, RCW 10.01.160(3) does not preclude a court from imposing community custody supervision fees on an indigent defendant. *Id.*

We hold that the trial court could impose community custody supervision fees here even though Ziesemer was indigent. However, it is unclear whether the trial court intended to impose supervision fees. The court stated that it would impose only mandatory LFOs. This comment suggests that the court did not intend to impose discretionary supervision fees.

Because it is unclear whether the trial court intended to impose community custody supervision fees, we remand for the trial court to consider in its discretion whether to impose those fees.

---

[1] RCW 9.94A.703 has been amended since the events of this case transpired. Because these amendments are not material to this case, we cite to the current version of the statute.

No. 54369-9-II

CONCLUSION

We affirm Ziesemer's convictions, but we remand for the trial court to consider whether to impose community custody supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

I concur:

LEE, C.J.

CRUSER, J. (concurring in part, dissenting in part) – I respectfully dissent from the majority's decision to remand this case for reconsideration of the community custody supervision fee based on the analysis in *State v. Starr*, 16 Wn. App. 2d 106, 109-10, 479 P.3d 1209 (2021).

I concur with the remainder of the majority's opinion.

_____
CRUSER, J.