# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

                Respondent,

v.

JASON PATRICK SPAULDING,

                Appellant.

No. 53253-1-II

PUBLISHED OPINION

MAXA, J. – Jason Spaulding appeals his conviction of indecent liberties with forcible compulsion, claiming that the trial court erred in finding him ineligible for a Special Sex Offender Sentencing Alternative (SSOSA). He also challenges the imposition of certain legal financial obligations (LFOs).

We conclude that the trial court erred in ruling that Spaulding was ineligible for a SSOSA because he did not have an established relationship with the victim. However, that error is harmless because we conclude that the trial court did not err in ruling that SSOSA was not appropriate because Spaulding was not amenable to treatment and created a risk to the community. Accordingly, we affirm the trial court's denial of a SSOSA, but we remand for the trial court to reevaluate the imposition of supervision fees as determined by the Department of Corrections (DOC) and to strike the interest accrual provision regarding nonrestitution LFOs from the judgment and sentence.

FACTS

Spaulding first contacted KM on August 1, 2018, by messaging her on Facebook.  They exchanged several messages through August 4.  On August 8, they met in person for the first time by happenstance at an apartment in Port Angeles.  Spaulding then drove KM and three others to Sequim for breakfast.  On the way back to Port Angeles, they stopped at a store and Spaulding bought KM some makeup, clothing, and other items.  Spaulding was flirtatious and was touching KM, including grabbing her rear end.  KM tolerated Spaulding's behavior because "she believed they were developing a relationship and she was going to live with him."  Clerk's Papers (CP) at 309.

The group drove to Spaulding's residence outside of Port Angeles.  Spaulding and KM were preparing a room for her to stay in.  Spaulding became more aggressive with KM, touching her more and at one point throwing her down on the bed.

Later that day, two of the people left and one went outside.  Spaulding then pushed KM into a chair, pulled her top up over her face, trapping her arms, and pulled her pants down.  KM told Spaulding no but he held her down, inserted his penis into her vagina, and inserted his fingers into her rectum.

When Spaulding left to take a shower, KM ran outside.  She was topless, as her shirt had come off during the rape.  When Spaulding followed her outside, KM retrieved her shirt.  Each time she tried to leave, Spaulding physically prevented her from leaving.  Eventually, KM and the other person were able to run to a nearby house, where the owner came out with a gun and called 911.  Spaulding ran off.

The State charged Spaulding with second degree rape by forcible compulsion.  The State offered to amend the information to the reduced charge of indecent liberties with forcible

2

compulsion if Spaulding pled guilty to the reduced charge. The State also would recommend a SSOSA if Spaulding was eligible. Spaulding agreed. Spaulding pleaded guilty to one count of indecent liberties with forcible compulsion. The trial court accepted Spaulding's guilty plea and ordered a presentence investigation report (PSI) to determine if Spaulding was eligible for a SSOSA.

The community custody officer who prepared the PSI concluded that Spaulding was ineligible for a SSOSA because he did not have an established relationship with the victim, a requirement under RCW 9.94A.670(2)(e). Dr. Michael Comte performed a psychosexual evaluation. In his report, he indicated that Spaulding was minimizing his responsibility, was not acknowledging his actual behavior, and did not have insight into his mental health issues.

The trial court denied the requested SSOSA and filed a memorandum opinion in support of its decision. The court gave two reasons for denying the request. First, the court concluded that Spaulding was not eligible for a SSOSA because he and KM did not have an "established relationship" as required under RCW 9.94A.670(2)(e). The court acknowledged that Spaulding and KM had some type of existing relationship, but that the relationship was not established because they had known each other for only a short time. Second, the court concluded that Spaulding was not amenable to treatment and presented a risk to the community, two of the factors to be considered under RCW 9.94A.670(4).

The trial court found that Spaulding did not have the ability to pay discretionary LFOs and imposed only the mandatory $500 victim assessment fee and struck the discretionary fees. Without comment, the court did not strike a provision in the judgment and sentence requiring Spaulding to "pay supervision fees as determined by DOC." CP at 97. And without comment, the court did not strike an interest accrual provision stating: "The financial obligations imposed

in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments." CP at 101.

Spaulding appeals the trial court's failure to impose a SSOSA and the court's imposition of supervision fees and interest.

## ANALYSIS

### A.    SSOSA ELIGIBILITY AND APPROPRIATENESS

Spaulding argues that the trial court erred in finding him ineligible for a SSOSA because he had an established relationship or connection with KM and in finding that he was not amenable to treatment.  We agree with the first contention but not with the second.

#### 1.    Legal Principles

RCW 9.94A.670(2) provides the eligibility requirements for a SSOSA.  An offender is eligible for a SSOSA if, among other requirements not at issue here, "The offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime."  RCW 9.94A.670(2)(e).

If the defendant is eligible for a SSOSA, the court must consider a number of factors in deciding whether to grant a SSOSA:

> After receipt of the reports, the court shall [1] consider whether the offender and the community will benefit from use of this alternative, [2] consider whether the alternative is too lenient in light of the extent and circumstances of the offense, [3] consider whether the offender has victims in addition to the victim of the offense, [4] consider *whether the offender is amenable to treatment*, [5] consider the *risk the offender would present to the community*, . . . . The fact that the offender admits to his or her offense does not, by itself, constitute amenability to treatment.

RCW 9.94A.670(4) (emphasis added).

The statute requires the trial court to enter written findings stating its reasons only if the court imposes a SSOSA contrary to the victim's opinion.  RCW 9.94A.670(4).

2.     Standard of Review

The decision to grant a SSOSA is entirely at the trial court's discretion, as long as the court's decision does not rest on an impermissible basis. *State v. Sims*, 171 Wn.2d 436, 445, 256 P.3d 285 (2011). A trial court abuses its discretion when its sentencing decision is manifestly unreasonable or exercised on untenable grounds. *State v. Autrey*, 136 Wn. App. 460, 470, 150 P.3d 580 (2006).

However, we review de novo whether a defendant is eligible for a SSOSA under RCW 9.94A.670(2)(a) because that question is a matter of statutory interpretation. *State v. Pratt*, 11 Wn. App. 2d 450, 457, 454 P.3d 815 (2019), *review granted*, 195 Wn.2d 1023 (2020).

3.     Established Relationship or Connection

The trial court concluded that Spaulding did not have an established relationship with KM and made the following finding:

> The court finds that Mr. Spaulding and the victim in this matter did not have an established relationship as required under RCW 9.94A.670(2)(e). They became aware of one another a few days prior to the date of the crime, and in fact met in person for the first time on the date of the crime. On the day of the crime their relationship consisted, in large part, of him buying the victim gifts, promising her housing, and engaging in sexualized behavior leading up to the crime.
>
> Inherent in the concept of an "established relationship" is the passage of time. In other words, an "existing relationship" is different than an "established relationship." There was some kind of existing relationship, but it was not an established relationship. For purposes of RCW 9.94A.670, the court finds that an established relationship is not created by a few phone calls and social media contacts over a few days, followed by in person contact for a few hours prior to the commission of the crime.

CP at 157-58.

However, the trial court ignored the plain language of RCW 9.94A.670(2)(e). The statute does not necessarily require an "established relationship." RCW 9.94A.670(2)(e) states that to be eligible for a SSOSA the defendant must have "an established relationship with, *or*

5

*connection to*, the victim." (Emphasis added.) So the defendant must have either an established relationship or an established connection with the victim.[1] Further, the relationship or connection must be "such that the sole connection with the victim was not the commission of the crime." RCW 9.94A.670(2)(e).

Here, there was evidence that Spaulding had an established *connection* to KM even if they did not have an established *relationship*. Spaulding and KM chatted online for several days. At some point they decided she would move into his house. They happened to meet, and drove to Sequim. On the way back to Port Angeles, Spaulding stopped and bought KM various items. When they went to Spaulding's house, Spaulding and KM were preparing the room in which she planned to live.

We conclude that the trial court erred in failing to consider whether this interaction between Spaulding and KM constituted an established connection under RCW 9.94A.670(2)(e). In addition, the trial court erred in failing to consider whether Spaulding's "sole connection with [KM] was not the commission of the crime." RCW 9.94A.670(2)(e).

4. Amenability to Treatment/Risk to the Community

The trial court also found that a SSOSA was not appropriate for Spaulding because he was not amenable to treatment, which created a risk to the community.

A defendant is "amenable" to treatment if "given his background, history, social and economic circumstances, and psychological condition . . . both he and the community [could] benefit from community-based treatment under SSOSA." *State v. Oliva*, 117 Wn. App. 773,

---

[1] In *Pratt*, this court concluded that although the statutory language is ambiguous, the word "established" modifies both "relationship" and "connection." *Pratt*, 11 Wn. App. 2d at 459.

780, 73 P.3d 1016 (2003). We examine the record to see if it supports the sentencing court's decision that a defendant is not amenable to treatment. *Id.*

> Here, the trial court stated:
>
> [Spaulding] invalidated part of the testing by his inconsistent responses. The evaluator made note of other contradictions in responses Mr. Spaulding provided to inquiries. There were concerns about his accurately reporting of his past and he was confused about events and the sequence of events. Although he had admitted the elements of the crime as required by statute, he does not admit all aspects of the crime. Of significant concern to the court is the minimizing of the behavior.
> . . .
>
> Taken as a whole, the court finds that Mr. Spaulding['s] inability to accurately report and understand his actions create a risk to the community. . . . His lack of insight, lack of candor about the crime, and inability to accurately report and understand events all indicate that he is not amenable to treatment, and does present a risk to the community.
>
> Accordingly, the request for a SSOSA under RCW 9.94A.670 is denied.

CP at 158-59.

Dr. Comte's report provides substantial evidence to support the trial court's finding that Spaulding was minimizing his responsibility and not acknowledging his actual behavior. In the report, Dr. Comte set out Spaulding's version of the events, which was completely different than KM's description and was implausible. For example, Spaulding denied that sexual intercourse occurred even though a forensic exam revealed semen inside KM's vagina. Dr. Comte also found that Spaulding's testing for the personality scoring was invalid because of inconsistent responses. Further, Dr. Comte observed, "He is acknowledging the alleged victim did 'mumble no' during the alleged assault, but he said he did not take her refusal seriously and continued to sexually interact with her." CP at 137.

Dr. Comte also noted, "Despite years of mental health counseling, he does not appear to have a great deal of insight into his issues." CP at 136. Dr. Comte stated:

> I suspect he might not qualify for SSOSA, because he is not admitting [to] all aspects of the alleged assault. Specifically, he is denying penile penetration of the alleged victim. Because of Mr. Spaulding's emotional stability, it is difficult to advocate for probation, but if he was receiving mental health counseling in Port Angeles and sex offender counseling elsewhere, there is always a chance he could stabilize and lean to live a productive and responsible life.

CP at 138.

Spaulding's lack of insight into his own sexual issues, his minimization of the events with KM, and his implausible denial that he had sexual intercourse with KM support the trial court's decision. We conclude that the trial court did not abuse its discretion in finding Spaulding unamenable to treatment and created a risk to the community.

### 5. Harmless Error

The trial court based its denial of a SSOSA both on Spaulding's ineligibility under RCW 9.94A.670(2)(e) and on the fact that he was not amenable for treatment and created a risk to the community, two of the factors to be considered under RCW 9.94A.670(4). One of the reasons on which the court relied, ineligibility for a SSOSA, was incorrect.

However, even if Spaulding was eligible for a SSOSA, he had no right to a SSOSA. *Sims*, 171 Wn.2d at 445. We are convinced after reviewing the trial court's oral comments at sentencing and the court's memorandum opinion that the court would have declined to impose a SSOSA even if Spaulding was eligible. Therefore, the trial court's error regarding application of RCW 9.94A.670(2)(e) was harmless.

### B. IMPOSITION OF LFOS

### 1. Supervision Fees

Spaulding argues that the sentencing court erred in imposing supervision fees as determined by DOC because he is indigent. The State disagrees, arguing that such fees are not "costs" under RCW 10.01.160.

RCW 9.94A.703(2)(d) governs the community custody supervision assessment and states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the DOC." Community custody supervision fees are discretionary LFOs because they are waivable by the court. *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020), *review denied*, 195 Wn.2d 1022 (2020).

Spaulding relies on RCW 10.01.160(3), which states, "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." However, the supervision fee is not a "cost" under RCW 10.01.160(3) just because it is a discretionary financial obligation. RCW 10.01.160(2) defines "cost" as an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. The supervision fee is not a "cost" under this definition. Therefore, RCW 10.01.160(3) does not prohibit the imposition of supervision costs on an indigent defendant.

However, we acknowledge that the imposition of LFOs on indigent defendants can create a significant hardship. *See State v. Blazina*, 182 Wn.2d 827, 835-37, 344 P.3d 680 (2015). The court in *State v. Clark* emphasized that there are strong policy arguments in favor of considering an indigent defendant's ability to pay discretionary LFOs even when such consideration is not required. 191 Wn. App. 369, 376, 362 P.3d 309 (2015). And under RCW 9.94A.703(2)(d), the trial court has discretion to waive the supervision fee.

Here, it is unclear here whether the trial court actually intended to impose a supervision fee as an LFO. Therefore, we encourage the trial court on remand to reevaluate the imposition of the supervision fee.

2. Interest Accrual Provision

Spaulding claims, and the State concedes, that the sentencing court erred in imposing interest on his nonrestitution LFOs because the legislature amended RCW 10.82.090 in 2018 to eliminate interest accrual on nonrestitution portions of LFOs. We agree.

The statutory language is unambiguous: "As of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations." RCW 10.82.090(1). Spaulding was convicted after June 7, 2018. Therefore, we remand for the trial court to strike this provision from the judgment and sentence.

CONCLUSION

We affirm the trial court's denial of a SSOSA, but we remand for the trial court to reevaluate imposition of the supervision fees and to strike the interest accrual provision regarding nonrestitution LFOs from the judgment and sentence.

MAXA, J.

We concur:

LEE, C.J.

SUTTON, J.

10