# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54290-1-II |
| Respondent, | |
| v. | |
| JOSHUA PAUL DEXTER, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Joshua Dexter appeals his conviction for assault in the second degree with an aggravating factor of committing the crime against a law enforcement officer. He contends the trial court erred by not instructing the jury on the lesser degree offense of assault in the fourth degree. Dexter also challenges the court's imposition of community custody supervision fees and collection costs as legal financial obligations (LFOs). We affirm Dexter's conviction, but we remand to the trial court to consider whether to impose supervision fees and collection costs.

## FACTS

While on patrol, Pierce County Sheriff's Office deputy Justin Watts pulled up behind Dexter's vehicle at a traffic light. Watts ran a routine check on the vehicle's license plate and learned that police had prior contact with the vehicle involving Dexter and that Dexter had an outstanding warrant for his arrest.

To investigate further, Watts followed the vehicle to an apartment parking lot and observed Dexter exit the vehicle. When Dexter returned to the vehicle, Watts pulled up behind the vehicle, got out of his car, and approached the vehicle's driver side. Dexter appeared nervous and refused to roll down his window.

Talking through the window, Watts requested Dexter's identification. Dexter told Watts he did not have identification and put the car in reverse. Watts tried to open the driver-side door but was unsuccessful. He ordered Dexter to stop. Dexter floored the vehicle's accelerator and launched the vehicle backwards, forcing Watts to move away quickly to avoid being hit by the vehicle's mirror and front quarter panel. Dexter's vehicle hit Watts's patrol vehicle hard enough to move it backwards five feet.

Dexter then swerved towards Watts as he pulled forward, forcing Watts to again jump out of the way. Dexter sped out of the parking lot, leaving tire marks on the concrete. Watts got into his patrol vehicle and attempted to follow but was unsuccessful.

The State charged Dexter with assault in the second degree with the aggravator that the offense was committed against a law enforcement officer. Dexter proposed a jury instruction on assault in the fourth degree, which the trial court denied. Dexter's trial ended in a mistrial.

At Dexter's second trial, he again proposed an instruction on assault in the fourth degree. Our record indicates that there was a "[d]iscussion off the record regarding instructions," but there is no transcript of that discussion. Report of Proceedings (RP) (July 30, 2019) at 290. Our record shows that after this discussion, the court presented to the parties its proposed instructions. There was no assault in the fourth degree instruction. The court inquired if there were any objections or exceptions. Dexter did not object at that time to the lack of an assault in the fourth degree instruction. The court did not instruct the jury on assault in the fourth degree.

2

The jury found Dexter guilty as charged. The jury also found by special verdict that Dexter committed the assault against a law enforcement officer and Dexter was aware Watts was a law enforcement officer at the time of the assault.

During the sentencing hearing, the trial court inquired into Dexter's ability to pay LFOs and found that he was indigent. The court stated, "The only legal financial obligation I'm going to impose today would be the crime victim . . . assessment." RP (Oct. 18, 2019) at 15.

The trial court sentenced Dexter to a standard range sentence, electing not to impose an exceptional sentence based on the jury's aggravator finding, and imposed 18 months of community custody. The court imposed the crime victim assessment as an LFO in the section of the judgment and sentence listing assessments and fees.

Dexter's judgment and sentence states that he must pay the "costs of services to collect unpaid [LFOs]." Clerk's Papers (CP) at 160. Under the "Community Custody" section of the judgment and sentence, it states that Dexter must "pay supervision fees as determined by [the Department of Corrections]." CP at 162. The judgment and sentence also states, "The following extraordinary circumstances exist that make payment of nonmandatory legal financial obligations inappropriate: D is indigent." CP at 158. Dexter appeals.

ANALYSIS

I.    LESSER DEGREE OFFENSE

Dexter contends that the trial court erred in not offering his assault in the fourth degree jury instruction. We disagree.

A.      State's Preliminary Argument

The State argues that Dexter did not preserve his jury instruction argument because he did not object to the omission of an assault in the fourth degree instruction when the trial court presented its proposed instructions. In general, a party may not raise an issue for the first time on appeal. RAP 2.5(a). However, here, Dexter proposed an assault in the fourth degree instruction at both his first and second trial. And our record shows there was an off the record discussion regarding jury instructions directly before the court presented its proposed instructions to the parties. We conclude this is sufficient to preserve the issue for review.

B.      Legal Principles

We review a trial court's decision not to give a jury instruction for an abuse of discretion if the decision is based on a factual determination, and if it is based on a legal conclusion, it is reviewed de novo. *State v. Coryell*, 197 Wn.2d 397, 405, 483 P.3d 98 (2021).

When the State charges a defendant "for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged . . . and guilty of any degree inferior thereto." RCW 10.61.003. An instruction on a lesser degree offense is appropriate where (1) the statutes for both the charged offense and lesser offense proscribe only one offense, (2) the state charges an offense that is divided into degrees and the proposed offense is a lesser degree of the charged offense, and (3) the jury could reasonably find that the defendant committed only the lesser offense. *Coryell*, 197 Wn.2d at 400 (applying *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).

The relevant statutes in this case are RCW 9A.36.021 (assault in the second degree) and RCW 9A.36.041 (assault in the fourth degree). As charged here, a person is guilty of assault in the second degree if he or she assaults another with a deadly weapon or with intent to commit a

felony. RCW 9A.36.021(1)(c), (e). A deadly weapon includes a vehicle. RCW 9A.04.110(6). A person is guilty of assault in the fourth degree if he or she intentionally assaults another and the circumstances do not amount to assault in the first, second, or third degree or custodial assault. RCW 9A.36.041(1).

      C.      Lesser Degree Offense Jury Instruction

The first two prongs from *Workman* are met here. The State charged Dexter with assault in the second degree as proscribed under RCW 9A.36.021(1) and Dexter requested a lesser degree offense instruction of assault in the fourth degree as proscribed under RCW 9A.36.041(1).[1] The statutes proscribe only one offense and assault in the fourth degree is a lesser degree offense of assault in the second degree. At issue is the third prong, which is the factual component of the test.

The factual prong of the *Workman* test "is satisfied only if based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser." *Coryell*, 197 Wn.2d at 407. When determining whether the evidence was sufficient to support a lesser degree offense instruction, we must view the "'evidence in the light most favorable to the party that requested the instruction.'" *Id*. at 415 (quoting *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000)). "[T]he question is whether the evidence raises an inference that the lesser degree . . . offense was committed such that a jury might have a reasonable doubt as to which degree of assault was committed, believe that some level of assault was committed, and find the defendant guilty of the lesser offense." *Coryell*, 197 Wn.2d at 417-18.

---

[1] The legislature amended RCW 9A.36.041 since Dexter was charged, but because the relevant language has not changed, we cite to the current version of the statute. LAWS OF 2020, ch. 29, § 7.

5

Here, the trial court's reasoning for denying Dexter's assault in the fourth degree instruction is not in our record. Nevertheless, viewing the evidence in the light most favorable to Dexter we cannot say that the evidence shows that Dexter could have committed assault in the fourth degree and not assault in the second degree.

Watts was next to Dexter's car, Dexter launched the vehicle backwards, forcing Watts to dodge out of the way to avoid being hit by the mirror and front quarter panel of Dexter's vehicle. Dexter's vehicle hit Watts's patrol vehicle hard enough to move it backwards five feet. Dexter then put his car in drive and swerved towards Watts, forcing Watts to again jump out of the way.

These facts support an inference that Dexter assaulted Watts with a deadly weapon, which establishes assault in the second degree and not assault in the fourth degree. Moreover, Watts was a law enforcement officer. "A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree . . . [a]ssaults a law enforcement officer . . . who was performing his or her official duties at the time of the assault." RCW 9A.36.031(1)(g). Watts was performing his duties as a law enforcement officer at the time of the assault. Accordingly, the facts of this case show either assault in the second degree or assault in the third degree, but clearly not assault in the fourth degree.

By comparison, in *Coryell*, the State charged Coryell with assault in the second degree based on strangulation. 197 Wn.2d at 404. Coryell requested a lesser degree instruction, arguing the evidence supported an inference that he assaulted, but did not strangle, his girlfriend. *Id.* at 417. The trial court denied his request. *Id.* at 404. The jury found Coryell guilty. *Id.* at 405. The Supreme Court reversed Coryell's conviction and remanded, holding that because there was evidence that cast doubt on whether Coryell strangled the victim as defined in the assault statute, he was entitled to a lesser degree assault instruction. *Id.* at 419.

Our case is distinguished from *Coryell* because there was no evidence that cast doubt that Dexter assaulted Watts with a deadly weapon or that Watts was not a law enforcement officer performing his official duties at the time of the assault. Accordingly, based on the *Workman* test, the trial court did not err in denying Dexter's proposed jury instruction on the lesser degree offense of assault in the fourth degree.

## II. LFOs

Dexter contends the community custody supervision fees and collection costs referenced in his judgment and sentence were wrongly imposed and, therefore, we must remand for the trial court to strike them. We conclude that although the court had authority to impose these fees, the record is unclear whether the court actually intended to impose them.

### A. State's Preliminary Argument

Initially, the State makes two procedural arguments. First, the State argues that we should not consider Dexter's LFO claims because he did not object in the trial court. Second, the State argues that Dexter is not an aggrieved party under RAP 3.1 because collection costs and supervision fees may never be incurred. This essentially is a ripeness claim.

As set forth above, a party generally may not raise an issue for the first time on appeal. RAP 2.5(a). Under *State v. Blazina*, 182 Wn.2d 827, 834-36, 344 P.3d 680 (2015), we may exercise our discretion under RAP 2.5(a) to consider the imposition of LFOs. There is no explanation for Dexter's failure to object in the trial court to the imposition of collection costs and supervision fees. Dexter had an obligation to raise the issue so the court could clarify whether it intended to impose those fees. However, the Supreme Court has repeatedly signaled that we should exercise our discretion to address LFO issues. *See Blazina*, 182 Wn.2d at 683; *State v. Lee*,

188 Wn.2d 473, 501-02, 396 P.3d 316 (2017). Therefore, we consider the imposition of collection costs and supervision fees.

Turning to the ripeness issue, the State's argument fails because Dexter is currently aggrieved if there is an error in his judgment and sentence. Further, this is Dexter's opportunity to challenge all aspects of his judgment and sentence that he finds objectionable. He cannot wait until these challenged LFOs are incurred because an appeal at that time would be untimely.[2]

B.      Imposition of Supervision Fees and Collection Costs

Dexter argues that the trial court erred in failing to waive the requirement to pay community custody supervision fees and collection costs after finding him indigent.

1.      Community Custody Supervision Fees

RCW 9.94A.703(2)(d) states that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: . . . [p]ay supervision fees as determined by [DOC]." Because supervision fees are waivable by the trial court, they are discretionary LFOs. *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). But a discretionary supervision fee is not a "cost" as defined in RCW 10.01.160(2), and therefore the prohibition in RCW 10.01.160(3) of imposing "costs" on an indigent person is inapplicable. *Id.* Therefore, trial courts may impose supervision fees as an LFO even if the court finds a defendant is indigent.

Here, the judgment and sentence section regarding community custody imposed supervision fees as determined by DOC as a condition of community custody. But on the judgment and sentence, it states, "The following extraordinary circumstances exist that make payment of nonmandatory legal financial obligations inappropriate: D is indigent." CP at 158. Because

---

[2] As a result, we are troubled by the State's continued assertion of this frivolous argument in criminal appeals.

supervision fees are nonmandatory LFOs (even though they are not costs), this statement suggests that the court did not intend to impose supervision fees.

On the other hand, the supervision fee provision was in a separate part of the judgment and sentence dealing with community custody. Even though the trial court waived other discretionary LFOs, it is possible that the court intended to impose supervision fees as a condition of community custody. The internal inconsistency on the judgment and sentence needs clarification. Accordingly, we remand for the court to consider in its discretion whether to impose supervision fees.

### 2. Collection Costs

RCW 36.18.190 provides that "[t]he superior court may, at sentencing or at any time within ten years, assess as court costs the moneys paid for remuneration for services or charges paid to collection agencies or for collection services." We assume without deciding that collection costs are not costs within the meaning of RCW 10.01.160(2) and, therefore, can be imposed on an indigent defendant. However, it is unclear from our record whether the trial court intended to impose collection costs if Dexter failed to pay his LFOs. Accordingly, we remand for the trial court to consider in its discretion whether to impose collection costs.

We affirm Dexter's conviction, but we remand to the trial court to consider whether to impose supervision fees and collection costs.

9

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, A.C.J.

Cruser, J.