# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54589-6-II |
| Respondent, | |
| v. | |
| MICHAEL AUSTIN BRAZILLE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Michael A. Brazille appeals sentencing conditions imposed after he pled guilty to attempted second degree rape of a child. Brazille argues that the trial court exceeded its statutory authority and violated his fundamental constitutional right to parent by prohibiting unsupervised contact with his biological children and stepchildren, and by prohibiting written contact with his children. Brazille also argues that the sentencing condition prohibiting contact with his minor siblings was improperly imposed because it is not crime-related. Finally, Brazille argues that certain legal financial obligations (LFOs) must be stricken because he is indigent.

We decline to address the claims related to Brazille's biological children and stepchildren. We affirm the sentencing condition prohibiting contact between Brazille and his minor siblings. As to the challenged LFOs, we reverse and remand to the trial court to consider the challenged LFOs in accordance with this opinion.

## FACTS

The State charged Brazille with attempted second degree rape of a child and communication with a minor for immoral purposes. Brazille pled guilty to attempted second

degree rape of a child, and the State dismissed the charge of communication with a minor for immoral purposes. In his guilty plea, Brazille confirmed that he "did take a substantial step towards having sexual intercourse with another who was at least 12 years old and less than 14 years old" while being "at least 36 months older than the victim" and "not married to the victim." Verbatim Report of Proceedings (VRP) (Nov. 1, 2019) at 12. At sentencing, the trial court referred to the case as a "'net nanny'" case, coordinated by police, where "there really wasn't a child that Mr. Brazille was coming down to have sex with." VRP (Apr. 6, 2020) at 37.

In a sentencing memorandum, Brazille requested

an exceptional downward sentence of 52 Months to Life, $500 Crime Victim Penalty, $100 DNA fee, Sexual Deviancy Evaluation and follow all recommended treatment; No Contact with Minors; *Contact with his children, step-child, and family members that are below the age of 18 in the presence of Adult that is aware of the charges;* No internet access, unless approved by his CCO and Treatment Provider, Comply with Sex Offender Registration.

Clerk's Papers (CP) at 27 (emphasis added). The sentencing memorandum also noted that "[s]tate infringements on the parent-child relationship as a function of the sentence must be reasonably necessary to meet a compelling state interest, cannot be arbitrary, must be narrowly tailored, and must be sensitively imposed." CP at 38. The argument section of Brazille's sentencing memorandum asked "that the court allow Mr. Brazille to receive information regarding the lives of his children" and "not prohibit him from having contact with his children." CP at 38. Brazille submitted a psychosexual evaluation that found he had "a long history of boundary issues," posed "an average risk to reoffend sexually," and was "amenable to treatment." CP at 55, 57.

In its sentencing memorandum, the State agreed that Brazille should be allowed supervised contact with his biological children and stepchildren. The State requested that Brazille's contact

2

with his biological children and stepchildren be "sight and sound" supervised "by an adult who is familiar with the nature of Mr. Brazille's charges." CP at 67. But the State argued that Brazille should be prohibited from contacting other minor family members without permission from his treatment provider, the Department of Corrections (DOC), and the court.

At the sentencing hearing, Brazille's counsel requested that any limitations on contact with his children be "narrowly tailored." VRP (Apr. 6, 2020) at 32. Brazille's counsel asked that Brazille be allowed "some sort of contact with his children" and noted that "[w]e are grateful to the State for their suggestion about sight and sound." VRP (Apr. 6, 2020) at 32. Brazille's counsel expressed some concern about the meaning of "sight and sound" supervision but did not ultimately object or modify Brazille's original request to have some sort of supervised contact with his children, stepchildren and minor family members. Additionally, Brazille's counsel asked for the court to allow written contact with Brazille's children and stated that "we have no problem with that being supervised by another adult who is aware of the charges." VRP (Apr. 6, 2020) at 33.

In its oral ruling, the trial court sentenced Brazille to 60 months of confinement. The court expressly imposed a $500 crime victim fund assessment and a $100 DNA fee. The trial court ordered, among other conditions, that Brazille have no contact with minors except with his biological children and stepchildren, and that contact with his biological children and stepchildren must be sight and sound supervised by an adult who is aware of Brazille's conviction and the circumstances related to it. The trial court also ordered that the supervision requirement continue when Brazille is out of custody, with the approval of his treatment provider, unless his treatment provider finds that he has been making progress and makes a different recommendation. The trial court further ordered no contact "with his sibling who is not yet of the age of majority but who is

not a young child but certainly falls within the age range of concern based upon this conviction."[1] VRP (Apr. 6, 2020) at 41-42. The trial court stated that the bases for its decision included Brazille's poor boundaries as recorded in his psychological and psychosexual evaluations, the actual facts of the crime, a lack of evidence in the file about his family's ability to protect children, and recommendations from the psychosexual evaluation. In response to a question from defense counsel, the trial court said, "I would not authorize, at this time, written correspondence between Mr. Brazille and minor children." VRP (Apr. 6, 2020) at 43.

Brazille's judgment and sentence included the sentencing provisions the trial court orally imposed at the sentencing hearing but does not mention written contact. The judgment and sentence required "no contact [with] minors except: defendant can have contact with his biological children [and] stepchildren that is sight [and] sound supervised by an adult that is aware of the charges." CP at 153. The judgment and sentence also included two provisions the trial court did not discuss at the sentencing hearing: a line ordering payment of a $200 criminal filing fee and form language ordering Brazille to "pay supervision fees as determined by DOC." CP at 152. The judgment and sentence did not include any finding about indigency; neither the "indigent" nor "not indigent" box is checked in the section regarding legal financial obligations and restitution. CP at 151.

---

[1] According to a letter that Brazille submitted with his sentencing memorandum, his younger minor siblings were 10 and 11 years old in February 2020.

About a month after the trial court entered Brazille's judgment and sentence, the trial court found Brazille indigent for the purposes of this appeal. The trial court found Brazille indigent because he "lacks sufficient funds to prosecute an appeal."[2] CP at 186.

Brazille appeals.

## ANALYSIS

### A. SUPERVISED CONTACT WITH BIOLOGICAL CHILDREN AND STEPCHILDREN

Brazille argues that the trial court exceeded its statutory authority and violated his fundamental constitutional right to parent by prohibiting unsupervised contact with his biological children and stepchildren. We decline to address this argument under the invited error doctrine.

"The invited error doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal." *Matter of Estate of Irwin*, 10 Wn. App. 2d 924, 927, 450 P.3d 663 (2019), *review denied*, 195 Wn.2d 1020, 464 P.3d 201 (2020). The invited error doctrine precludes our review "'even where constitutional rights are involved,'" as long as the appellant proposed or agreed to the error. *State v. Weaver*, 198 Wn.2d 459, 465, 496 P.3d 1183 (2021) (quoting *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005)); *see also State v. Casimiro*, 8 Wn. App. 2d 245, 249, 438 P.3d 137, *review denied*, 193 Wn.2d 1029, 445 P.3d 561 (2019) (courts do not need to consider challenges to sentencing conditions that were invited, even alleged constitutional errors).

---

[2] This language corresponds with an indigency finding under RCW 10.101.010(3)(d), which provides that a person is indigent if they are "[u]nable to pay the anticipated cost of counsel for the matter before the court because his or her available funds are insufficient to pay any amount for the retention of counsel."

Brazille contends that he did not invite error because his sentencing memorandum and argument at the sentencing hearing "make clear that counsel objected to any unreasonable limitation on Mr. Brazille's ability to contact his biological children and stepchild." Suppl. Br. of Appellant at 2. We disagree.

Here, Brazille *asked* the trial court for supervised contact with his biological children and stepchildren—his sentencing memorandum requested "[c]ontact with his children, step-child, and family members that are below the age of 18 *in the presence of Adult that is aware of the charges*." CP at 27 (emphasis added). Brazille's counsel made requests consistent with his sentencing memorandum at the sentencing hearing by asking for "some sort of contact with his children" and noting that "[w]e are grateful to the State for their suggestion about sight and sound [supervision]." VRP (Apr. 6, 2020) at 32. Although Brazille's counsel expressed some concern about the meaning of "sight and sound" supervision, counsel did not ultimately object or modify Brazille's original request to have some sort of supervised contact with his children. Consistent with Brazille's request, the trial court allowed Brazille to have supervised contact with his children and stepchildren by ordering that Brazille "can have contact with his biological children [and] stepchildren that is sight [and] sound supervised by an adult that is aware of the charges." CP at 153. Because Brazille proposed and agreed to a sentencing condition that requires supervised contact with his biological children and stepchildren, Brazille invited any alleged error relating to that sentencing condition.

Brazille also contends that invited error does not apply because he did not agree to sight and sound supervised contact once he is released from prison. But Brazille's sentencing memorandum and oral statements at sentencing draw no distinction between supervision while in

6

prison and after release. Brazille simply requested supervised contact, and the trial court granted that request.

Because Brazille proposed and agreed to a sentencing condition that requires supervision when he contacts his biological children and stepchildren, Brazille invited any alleged error relating to that sentencing condition. Therefore, we need not consider Brazille's challenge to the sentencing condition requiring supervised contact with his minor children and stepchildren by an adult who is aware of the charges.

B.     PROHIBITION ON WRITTEN CONTACT WITH BRAZILLE'S CHILDREN

Brazille argues that the sentencing condition prohibiting written contact with his children is not invited error because his "counsel specifically requested that the court allow Mr. Brazille to have written contact with his children while he is in prison," which the trial court then rejected. Suppl. Br. of Appellant at 4. We decline to address the issue because the trial court did not prohibit Brazille from having written contact in its written order.

A trial court's oral ruling "'is no more than an expression of its informal opinion at the time it is rendered.'" *State v. Friedlund*, 182 Wn.2d 388, 394, 341 P.3d 280 (2015) (quoting *State v. Mallory*, 69 Wn.2d 532, 533, 419 P.2d 324 (1966)). In contrast, the trial court's written judgment and sentence "is a final order subject to appeal." *Id.* at 395.

Here, at the sentencing hearing, Brazille's counsel requested that the court allow written contact between Brazille and his children, stating that "we have no problem with that being supervised by another adult who is aware of the charges." VRP (Apr. 6, 2020) at 33. In its oral ruling, the trial court said "I would not authorize, at this time, written correspondence between Mr. Brazille and minor children." VRP (Apr. 6, 2020) at 43. But the trial court's written order requires

"no contact [with] minors except: defendant can have contact with his biological children [and] stepchildren that is sight [and] sound supervised by an adult that is aware of the charges." CP at 153. The trial court's written order does not specifically mention nor prohibit written contact; the order requires that contact be supervised by an adult who is aware of the charges. The oral ruling is the only indication of any sentencing condition inconsistent with Brazille's request for supervised written contact, but that oral ruling is "no more than an expression of [the court's] informal opinion." *Friedlund*, 182 Wn.2d at 394 (quoting *Mallory*, 69 Wn.2d at 533). Because the trial court did not prohibit all written contact between Brazille and his children in its written judgment and sentence, we decline to address Brazille's argument about written contact.

## C.   PROHIBITIONS ON CONTACT WITH MINOR SIBLINGS

Brazille argues that the trial court exceeded its statutory authority by prohibiting all contact with his minor siblings because that condition is not crime-related. We disagree.

Courts can order offenders to comply with crime-related prohibitions. RCW 9.94A.703(3)(f). A crime-related prohibition is one that is related to the circumstances of the crime for which the offender is being sentenced. RCW 9.94A.030(10).[3] "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *State v. Nguyen*, 191 Wn.2d 671, 684, 425 P.3d 847 (2018) (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)). Sentencing conditions are subject to abuse of discretion review, *State v. Valencia*, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010), and will be reversed if they are manifestly unreasonable. *Nguyen*, 191 Wn.2d at 678.

---

[3] RCW 9.94A.030 was amended in 2020 and 2021. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

Here, the trial court cited to the age similarity between the fictitious young teenage victim of Brazille's crime and Brazille's minor siblings who were 10 and 11 years old as the basis for imposing the condition. The trial court also stated that Brazille's younger female sibling "certainly falls within the age range of concern based upon this conviction." VRP (Apr. 6, 2020) at 42. It is not manifestly unreasonable to conclude that Brazille poses some risk to pre-teen individuals, like his minor siblings, after he was convicted of attempted rape of a person "who was at least 12 years old and less than 14 years old." VRP (Nov. 1, 2019) at 12. Because there is "'some basis for the connection'" between Brazille's crime of conviction, second degree rape of a child, and the prohibition on contact with Brazille's minor siblings, the prohibition is crime-related. *Nguyen*, 191 Wn.2d at 684 (quoting *Irwin*, 191 Wn. App. at 657). Thus, the trial court did not abuse its discretion in prohibiting contact between Brazille and his minor siblings.

### D.    CRIMINAL FILING FEE

Brazille argues that the trial court erred in imposing a criminal filing fee. We agree.

Courts cannot impose discretionary costs, including criminal filing fees, on defendants who are found indigent under RCW 10.101.010(3)(a) through (c). RCW 36.18.020(2)(h);[4] *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018). If a defendant is not indigent, a court must assess "the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3); *Ramirez*, 191 Wn.2d at 748.

Here, the trial court made no indigency finding at the time of sentencing. Rather, the trial court found Brazille indigent about a month *after* he was sentenced. And the trial court found that

---

[4] RCW 36.18.020 was amended in 2021. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

Brazille was indigent for the purposes of appeal under RCW 10.101.010(3)(d), not under RCW 10.101.010(a), (b), or (c). Also, there is nothing in the record indicating whether the trial court meant to impose a criminal filing fee. And the trial court made no record of assessing Brazille's financial resources or the burden that payment of costs would impose as required by *Ramirez*, 191 Wn.2d at 748. Thus, the record fails to show that the trial court conducted a proper individualized inquiry into Brazille's ability to pay. Therefore, we reverse the criminal filing fee and remand for the trial court to consider the imposition of a criminal filing fee under RCW 10.01.160.[5]

E.    COMMUNITY CUSTODY SUPERVISION FEE

Brazille argues that the community custody supervision fee must be stricken. We remand for the trial court to clarify whether it intended to impose this fee.

RCW 10.01.160(3) states, "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." RCW 10.01.160(2) defines "costs" as expenses that are incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. The community custody supervision fee that Brazille challenges is not a "cost" covered by RCW 10.01.160(3).

---

[5] The State argues that the criminal filing fee was a scrivener's error and does not oppose remand for the purpose of clarification. A scrivener's error is a clerical mistake "that, when amended, would correctly convey the intention of the court." *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011). Because the trial court did not convey any intention regarding the criminal filing fee, it is unclear from the record whether or not the fee was a scrivener's error. Also, because the trial court imposed the $200 criminal filing fee without an adequate assessment of Brazille's ability to pay, the criminal filing fee was improperly imposed regardless of whether it was actually a scrivener's error.

However, under RCW 9.94A.703(2)(d), trial courts may waive the community custody supervision fee. "Community custody supervision fees are discretionary LFOs because they are waivable by the court." *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). When the record is unclear whether the trial court actually intended to impose a community custody supervision fee, remand is appropriate. *See id.* at 537.

Here, the record is silent as to whether the trial court exercised any discretion in determining whether to impose or waive the community custody supervision fee, and neither party addressed this fee in their arguments at sentencing. Therefore, we remand to the trial court to clarify whether it intended to impose the community custody supervision fee.

CONCLUSION

Because Brazille proposed and agreed to a sentencing condition that requires supervised contact with his biological children and stepchildren, Brazille invited any alleged error relating to that sentencing condition, and we do not consider Brazille's challenge to that sentencing condition. And because the trial court did not prohibit all written contact between Brazille and his children in the court's written judgment and sentence, we decline to address Brazille's argument that the trial court erred in prohibiting written contact with his children. We affirm the sentencing condition related to Brazille's minor siblings, but we reverse and remand the challenged LFOs to the trial court to consider in accordance with this opinion.

No. 54589-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.