# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  55248-5-II |
| Respondent, | |
| v. | |
| JESSE DANNEL HALE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jesse D. Hale appeals his conviction for failure to register as a sex offender (third offense).  Hale argues that the trial court erred by admitting improper opinion testimony and inadmissible hearsay, the prosecutor committed misconduct during closing argument, the trial court erred by imposing community custody supervision fees, and the registration requirement is unconstitutional because he was a juvenile at the time he committed the sex offense that resulted in the registration requirement.

We hold that the trial court did not err in its evidentiary rulings, the prosecutor's misconduct during closing argument was not prejudicial, remand is proper for the trial court to consider imposition of the community custody supervision fees because the record is unclear, and Hale's argument that the registration requirement is unconstitutional is not properly before this court.  Accordingly, we affirm Hale's conviction but remand for the trial court to consider the imposition of community custody supervision fees.

FACTS

The State charged Hale with failure to register as a sex offender (third offense) between August 28, 2019 and October 20, 2019. Hale had a 1999 conviction for first degree rape of a child that required him to register as a sex offender. Hale was 13 years old when he committed first degree rape of a child.

Prior to trial, Hale moved to prohibit opinion testimony opining that Hale was not living at his registered address. The trial court deferred ruling on the motion and instructed Hale to object to any testimony he believed was improper.

At trial, Hale stipulated that he was previously convicted of a sex offense and that he "was required to register in the State of Washington as a sex offender between August 28th, 2019, and October 29th, 2019." 2 Verbatim Report of Proceedings (VRP) at 157. Hale had registered his address on August 16, 2019, as 2309 Fawcett Avenue.

Jason Turk, the manager of the house at 2309 Fawcett Avenue, testified that Hale had a signed lease agreement and had moved into the house. Turk saw Hale occasionally around the house, but not every day. Turk explained that although he was the house manager and he was responsible for enforcing house rules, he did not personally keep track of every house resident. The residents were also required to check in using a logbook, but that rule was not universally enforced. Turk testified that after August 28, there was no indication that Hale continued to live in the house. Turk did not see Hale after August 28. Turk also boxed up Hale's remaining belongings and rented his space to someone else on September 1.

Detective Christie Yglesias of the Tacoma Police Department was assigned to the sex offender registration unit. Detective Yglesias testified that she conducted an investigation into Hale because she received information that Hale was not living at his registered address. Hale objected, and the trial court ruled:

> I'm going to allow it only for the purpose of why she was investigating, not for the truth of the matter asserted. So the jury's only to consider that for the purposes of why she was investigating, not for any other purpose.

2 VRP at 174. Detective Yglesias explained that her investigation was conducted through email and she did not personally visit the house to verify whether Hale was living there.

Sally Ann Saxon was a probation officer with the Department of Corrections (DOC) monitoring Hale in August 2019. Saxon also received information that Hale was not living at his registered address. Hale objected to this testimony, but the trial court admitted the testimony for the limited purpose of explaining Saxon's actions. Saxon went to the home on August 29 to determine whether Hale was living there. Saxon testified:

> I received information that Mr. Hale had returned the night of the 28th to the residence and had been there for a short period of time. I—on the 29th, me and three other—two other [Community Correction Officers (CCOs)] went to the address and verified that Mr. Hale was not at the address, that there was nothing that had been moved from the previous day, including a roll of toilet paper the CCO had put on his pillow, which I observed that it was still there, and we verified through his talking to other housemates that Mr. Hale had not been—

2 VRP at 233. Hale objected to Saxon's testimony regarding the statements by other housemates as hearsay. The trial court sustained the objection.

Saxon also testified that she observed one pair of jeans and a shirt on the bed that was assigned to Hale, but did not find other clothing or hygiene items. She went on to testify:

We also verified the areas that was assigned to him and to that bed. None of his property were in those drawers. The property that was in there was verified to be of other individuals in that home.

2 VRP at 235. Hale objected based on hearsay, and the trial court overruled his objection. Saxon also observed a toilet paper roll on Hale's bed. Saxon explained that CCOs sometimes placed strange items on a person's bed to see if they were moved the next day. The following exchange took place:

> [STATE:] Okay. And so on that day when you went to do the home verification check, were you able to gather whether or not the defendant was living there?
>
> [SAXON:] I was able to verify that he was not.
>
> [HALE]: Objection, Your Honor. Calls for a legal conclusion. Goes to the ultimate issue.
>
> [COURT]: Well, I'm going to sustain it on hearsay, not on ultimate issue, if the—to the extent the testimony's based on anyone else's observations. So if you want to rephrase it as to information she has personally seen, you can rephrase.
>
> [STATE:] Based off your personal knowledge and observations of what was seen at the house during the verification check, did you form an opinion of whether the defendant was there?
>
> [SAXON:] It was apparent that he was not living there.

2 VRP at 237-38. Saxon also explained that another person she was supervising had moved into Hale's bed at the house on September 1.

On September 4, Saxon received a voicemail from Hale. In the voicemail, Hale said that he was not at the house every night and knew that DOC had gotten the sign-in sheets from the

4

house. He said he had been to the house the night before DOC came but was not at the house in the morning after that.

Before closing argument, the trial court instructed the jury that the "lawyer's statements are not evidence." Clerk's Papers (CP) at 56. The trial court also instructed the jury on the effect of the parties' stipulation:

> The parties have agreed that certain facts are true beyond a reasonable doubt. You must accept as true beyond a reasonable doubt that the person before the court, who has been identified in the charging document as the defendant, was previously convicted of a felony sex offense and, due to that conviction, that the defendant was required to register in the State of Washington as a sex offender between August 28, 2019 and October 29, 2019.

CP at 65. And the trial court instructed the jury that to convict Hale of failure to register as a sex offender, the State must prove (1) Hale was convicted of a felony sex offense; (2) Hale was required to register as a sex offender between August 28 and October 20, 2019; and (3) during the charged period, Hale knowingly failed to comply with a requirement of sex offender registration.

The State argued during closing argument:

> Not only did the defendant not register, but he was no longer living at the registered address. And how do we know that? Because Tacoma Police Detective Christie Yglesias, who then at the time worked for the sex offender registration unit, testified that the defendant was last required to stay at 6309 [sic] Fawcett Avenue, but she received information that he was no longer living there. And that —

> [HALE]:  Objection, Your Honor. That evidence wasn't admitted as substantive evidence.

> [COURT]:  The jury will determine what was proved based on the testimony that was allowed by the Court.

5

>    [STATE]:    She received information the defendant was not there, and so she contacted the house manager of that residence, Jason Turk, and confirmed via email with Jason Turk that the defendant in fact—

>    [HALE]:    Objection, Your Honor. That was evidence that was ruled to be hearsay.

>    [COURT]:    That objection is sustained.

>    [STATE]:    That she confirmed the defendant was no longer living at that address.

>    [HALE]:    Same objection.

>    [COURT]:    Sustained. Jury will disregard.

3 VRP at 290-91.

The jury found Hale guilty as charged. The trial court imposed a standard range sentence of 43 months. The judgment and sentence also included a community custody condition requiring Hale to pay community custody supervision fees.

Hale appeals.

## ANALYSIS

A.    OPINION TESTIMONY

Hale argues that the trial court erred by admitting improper opinion testimony. Specifically, Hale contends that Saxon's testimony that Hale was not living at the house was an improper opinion on guilt.[1] We disagree.

---

[1] Hale also argues that the trial court erred by admitting Saxon's testimony that she had been able to verify Hale was not living at the house because it was a legal conclusion and inadmissible. But the trial court sustained Hale's objection, so the trial court did not improperly admit the testimony Hale now challenges as inadmissible.

1.      Legal Principles

We review decisions to admit evidence for an abuse of discretion. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). The trial court abuses its discretion when its decision is manifestly unreasonable or when the decision is based on untenable grounds or reasons. *Id.* at 197. "'Where reasonable persons could take differing views regarding the propriety of the trial court's actions, the trial court has not abused its discretion.'" *Id.* at 196 (quoting *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001)).

A lay witness may testify to opinions "based upon rational perceptions that help the jury understand the witness's testimony and that are not based upon scientific or specialized knowledge." *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008); ER 701(a). Under ER 704, opinion testimony that is otherwise admissible "is not objectionable because it embraces an ultimate issue" that the jury needs to decide.

However, in criminal trials, opinions on guilt are improper because such opinions violate the right to an independent determination of facts by a jury. *Quaale*, 182 Wn.2d at 199. To determine whether testimony was impermissible opinion testimony on guilt, we consider the following factors:

> (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.

*Id.* at 200.

To find a person guilty of failing to register as a sex offender, the State must prove that the defendant "has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly

fails to comply with any of the requirements of RCW 9A.44.130." RCW 9A.44.132. A person has a duty to register if they have been convicted of a sex or kidnapping offense. RCW 9A.44.130(1)(a). If a person has registered and subsequently changes their address, they must provide the county sheriff with a change of address within three business days of moving. RCW 9A.44.130(5)(a). Alternatively, if a person lacks a fixed residence they must notify the county sheriff within three business days of ceasing to have a fixed residence. RCW 9A.44.130(6)(a).

2.      Not Improper Opinion Testimony On Guilt

In considering the factors for determining whether the testimony was impermissible opinion testimony on guilt, we conclude that Saxon's opinion that Hale was not living at the house was not an improper opinion on guilt. First, the type of witness involved does not indicate that the opinion testimony was improper. Although Saxon was a probation officer, she testified as a fact witness, and her opinion that Hale was not living in the house was a lay opinion based on her personal knowledge and observations and did not carry any special indication of reliability that may be present with scientific or expert testimony. *See State v. Kirkman*, 159 Wn.2d 918, 931, 155 P.3d 125 (2007) (detective's testimony regarding interview protocols did not contain a "special aura of reliability" beyond the reliability conferred on any sworn witness).

As to the second and third factors, the specific nature of the testimony and the nature of the charges show that Saxon's testimony was not an opinion on Hale's guilt. The State charged Hale with failure to register; thus, the State was required to prove that Hale had a duty to register and that he knowingly failed to comply with registration requirements during the charging period. Saxon's statement did not opine on whether Hale had a duty to register or knowingly failed to

8

register. Thus, because Saxon did not offer an opinion on whether Hale failed to comply with registration requirements, her testimony was not an opinion on guilt.

Similarly, the fourth and fifth factors (the type of defense and other evidence before the jury) show that Saxon's testimony was not an improper opinion on guilt. Here, Hale's defense was a general denial, and Hale argued that the State failed to prove that he failed to comply with the registration requirements because the State failed to prove where Hale was or what he was doing after September 1. Saxon's opinion that Hale was not living at the house based on her observations on August 29 is limited in scope and does not address the entire charging period. Also, there was other evidence regarding whether Hale was living at the house, including Turk's testimony, Saxon's personal observations from her verification check, testimony that another person rented Hale's bed starting September 1, and Hale's own voicemail message left for Saxon stating that he was not at the house every night. Looking at the evidence as a whole, Saxon's opinion that Hale was not living at the residence was not an opinion on guilt that invaded the province of the jury.

Considering all the factors, the trial court did not abuse its discretion in admitting Saxon's testimony because Saxon did not offer an improper opinion on Hale's guilt. Therefore, the trial court did not err.[2]

---

[2] Hale also appears to argue that the trial court erred by deferring ruling on Hale's motion in limine to exclude opinion testimony and requiring Hale to object at the time of testimony. Hale has not provided any argument or authority supporting his assertion that the trial court erred by deferring ruling on the motion in limine. *See State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002) (when an appellant fails to provide argument or authority, "[we] are not required to construct an argument on behalf of appellants"). Therefore, we decline to address this argument.

B.       HEARSAY

Hale argues that the trial court erred by admitting Saxon's testimony that the property in the drawers in the room belonged to other people living in the home. We disagree.

1.       Legal Principles

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). However, "[t]his court reviews whether a statement was hearsay de novo." *State v. Gonzalez-Gonzalez*, 193 Wn. App. 683, 688-89, 370 P.3d 989 (2016).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless an exception applies. ER 802.

2.       Not Hearsay

Hale asserts that Saxon was "allowed to testify about what she was told by others about whether items in the room belonged to Mr. Hale, that '[n]one of his property' was in the drawers and '[t]he property that was in there was verified to be of other individuals in that home.'" Br. of Appellant at 16 (quoting 2 VRP at 235). As an initial matter, Saxon was not permitted to testify to what other housemates told her because the trial court sustained the hearsay objection to that testimony.

Saxon testified:

---

Further, whether the trial court erred in deferring ruling on the motion in limine is moot because, for the reasons explained above, Saxon's testimony was not an improper opinion on guilt.

We also verified the areas that was assigned to him and to that bed. None of his property were in those drawers. The property that was in there was verified to be of other individuals in that home.

2 VRP at 235. Hale's hearsay objection to this testimony was overruled. Hale argues this testimony was "classic hearsay" because it was the out-of-court statements of the housemates about what property belonged to Hale. Br. of Appellant at 16. But Saxon did not testify to statements made by any other person. Nor did Saxon testify that her testimony that none of Hale's property was in the drawers or that the property in the drawers belonged to other individuals was based on what others told her. And Saxon did not testify about how she verified the information. Saxon testified to her observations, her actions, and her conclusions. Therefore, Saxon's testimony was not hearsay.

Because Saxon's testimony was not hearsay, the trial court did not allow inadmissible hearsay and did not err by overruling Hale's hearsay objection.

C.      PROSECUTORIAL MISCONDUCT

Hale argues that the prosecutor committed misconduct during closing argument by referencing aspects of Yglesias' testimony that were not admitted as substantive evidence. The prosecutor's arguments were improper, but not prejudicial.

To prevail on a claim of prosecutorial misconduct, Hale must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). First, we determine whether the prosecutor's conduct was improper. *Id*. at 759. If the prosecutor's conduct was improper, we must then determine whether the conduct was prejudicial.

11

*Id.* "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* at 760.

Hale identifies two statements in closing argument as improper. First, Hale argues that the prosecutor improperly relied on Detective Yglesias' testimony that she received information that Hale was not living at the house. Second, Hale argues that the prosecutor improperly argued that Detective Yglesias confirmed Hale was not at the house. Hale objected to both statements. The State concedes that the prosecutor's statements were improper. We accept the State's concession because the State was arguing evidence that was excluded or admitted for a limited purpose. However, even though the prosecutor's statements were improper, Hale cannot show the statements were prejudicial.

The State's argument that Detective Yglesias received information that Hale was no longer living at the house had no substantial likelihood of affecting the verdict. Although the trial court did not sustain or overrule Hale's objection, the trial court stated that it was for the jury to determine what was proved. And the trial court had instructed the jury at the time of Detective Yglesias' testimony it was to consider that testimony only for the purpose of why she was investigating. Further, the trial court instructed the jury that the State's argument was not evidence. Because we presume the jury follows the trial court's instructions, there is not a substantial likelihood that the jury improperly considered the reference to Detective Yglesias' testimony as substantive evidence affecting the verdict. *See State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014) (presuming that juries follow the court's instructions absent evidence to the contrary).

The State's argument that Detective Yglesias confirmed Hale was no longer living at the house also had no substantial likelihood of affecting the verdict. As to this argument, the trial court sustained the objection and ordered the jury to disregard the prosecutor's statement. Because we presume the jury followed the trial court's instructions, we presume that the jury disregarded the statement. Thus, there is no substantial likelihood that the improper statement affected the jury's verdict because the jury is presumed to have disregarded the improper argument and there is no evidence to the contrary.

Because Hale cannot show that there was a substantial likelihood that the prosecutor's improper arguments affected the jury's verdict, his prosecutorial misconduct claim must fail.

D.    COMMUNITY CUSTODY SUPERVISION FEES

Hale argues that the trial court erred by imposing community custody supervision fees because Hale is indigent. Although the State does not object to striking the community custody supervision fees, the State does not concede that imposition of community custody supervision fees was improper. We remand for the trial court to consider imposition of the community custody supervision fees.

"Community custody supervision fees are discretionary [legal financial obligations (LFOs)] because they are waivable by the court." *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). If the record is unclear whether the trial court intended to impose the community custody supervision fees, remand is appropriate. *Id*. at 537.

Here, neither party addressed community custody supervision fees in their sentencing recommendations. And although the trial court found Hale to be indigent, it did not specifically

address LFOs in its sentencing determination. Based on the record before us it is unclear whether the trial court actually considered or intended to require Hale to pay the community custody supervision fees. Accordingly, we remand to the trial court to consider the imposition of community custody supervision fees.

E.      CONSTITUTIONALITY OF REGISTRATION REQUIREMENT

Hale argues that the registration requirement he violated is unconstitutional because he was a juvenile at the time he committed the crime that resulted the registration requirement. The State argues that the constitutionality of the registration requirement is not properly before us because Hale failed to raise the constitutionality of the registration requirement at the trial court. We agree that the constitutionality of the registration requirement is not properly before this court.[3]

By stipulating that he had a conviction that required him to register, Hale invited any error he now alleges. "The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal." *State v. Mercado*, 181 Wn. App. 624, 630, 326 P.3d 154 (2014). "To be invited, the error must be the result of an affirmative, knowing, and voluntary act." *Id*. An appellant "must materially contribute to the error challenged on appeal by engaging in

---

[3] King County Department of Public Defense, the American Civil Liberties Union of Washington Foundation, and the Washington Defender Association moved for leave to file an amici curiae brief in this case. The motion was denied by a commissioner of this court and amici have moved to modify that ruling.

Generally, we will grant permission to file an amici curiae brief if the brief will assist the court. RAP 10.6(a). Amici assert that an amici curiae brief would assist the court because they provide valuable information that will help the court determine the constitutionality of the sex offender registration requirement as applied to juveniles. However, because the constitutionality of the sex offender registration requirement is not properly before this court, additional information will not assist us. Accordingly, we deny the amici's motion to modify the commissioner's ruling.

some type of affirmative action through which he knowingly and voluntarily sets up the error." *Id*. The invited error doctrine applies even to criminal defendants raising constitutional issues. *Id*. at 629-30.

RCW 9A.44.132 provides that a person is guilty of failure to register if the person had a duty to register under RCW 9A.44.130 and knowingly failed to comply with registration requirements. In challenging his conviction for failure to register, Hale argues that his conviction for failure to register is erroneous and must be reversed because he never should have had a duty to register in the first place. Hale contends he should not have had a duty to register imposed on him in the first place because, as a matter of law, RCW 9A.44.130 is unconstitutional as applied to juveniles.

However, Hale stipulated, and the jury was instructed, that it was true beyond a reasonable doubt that Hale "was required to register in the State of Washington as a sex offender between August 28, 2019 and October 29, 2019." CP at 65. The stipulation was an affirmative, knowing, and voluntary act that allowed the jury to find that Hale was required to register during the charging period. Hale cannot stipulate that he was required to register at trial and now argue that his conviction is erroneous because he did not have a duty to register, especially when Hale did not make any attempt to challenge the registration requirement before deciding to enter the stipulation. Therefore, we decline to address Hale's challenge to the constitutionality of the registration requirement that he raises for the first time on appeal after he stipulated in the trial court that he was required to register as a sex offender.

No. 55248-5-II

We affirm Hale's conviction, but, because the record is unclear, we remand for the trial court to consider the imposition of community custody supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Price, J.

16